UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-10370PBS

BARBARA CORDI-ALLEN AND )
JOHN ALLEN, )
     Plaintiffs, )
 )
 )
VS. )
 )
JOSEPH R. CONLON, ARTHUR F. HUTLIN,)
NORMAN H. POPE, KEITH S. ALTHAUS, )
and MARINNA MATRICARDI as they are )
Members and collectively the TRURO )
ZONING BOARD OF APPEALS and THE )
TOWN OF TRURO, MASSACHUSETTS, )
AND BROOKE NEWMAN, )
     Defendants )

## Defendants' Memorandum of Law
## in Support of Their Motion for Summary Judgment

Defendants Joseph R. Conlon, Arthur F. Hutlin, Norman H. Pope, Keithy S.

Althaus, and Marinna Matricardi, as they are members of the Truro Zoning Board

of Appeals (ZBA) and the Town of Truro (Town), submit this memorandum of

law in support of their motion for summary judgment. See Fed.R.Civ.P 56.

### I. Background[1]

This action involves an appeal of the ZBA's denial of the plaintiffs' request

for revocation of a building permit issued to defendant Brooke Newman.

Complaint, **Exhibit 1.** That permit issued to Ms. Newman on October 28, 1998 in

connection with her property at 3 Yacht Club Road in Truro. Complaint, ¶ 24,

---

[1]    The facts in this section are drawn from the Statement of Material
Undisputed Facts ("Statement of Facts"). As required under summary judgment
procedure, such facts must be interpreted in favor of the non-moving party. In so
stating undisputed material facts, the defendants do not concede or rely on these
facts for any purpose other than this motion for summary judgment.

**Exhibit 1**.  Ms. Newman's proposal involved the relocation and alteration of a pre-existing, two bedroom dwelling on her property, a proposed 90 square foot addition, and an upgraded Title 5 compliant septic system.  Pajaron Affidavit, ¶ 7, **Exhibit 2**.  The structure was proposed on a crawl space foundation with break away panels to meet building code requirements for construction in a flood zone. Id., ¶ 8.  No appeal was taken from the issuance of the building permit to Ms. Newman.  See, e.g. Allen Depo, pp. 12-13, **Exhibit 3**.  Construction began in 1999, and is now completed.  Complaint, ¶ 32; Pajaron Affidavit, ¶ 8.

The plaintiffs have been aware of Ms. Newman's building permit since 1998.  Allen Depo, p. 12; Cordi-Allen Depo, pp. 19-20, **Exhibit 4**.  Years after its issuance, in July 2004, they plaintiffs requested that the Building Commissioner revoke Ms. Newman's building permit "because she never obtained a special permit or variance from the Truro Zoning Board of Appeals for the additions allowed under the building permit."  July 26, 2004 letter, **Attachment 1** to October 26, 2004 letter at **Exhibit 5**.  The plaintiffs claimed that a special permit was required.  Id.  On October 19, 2004, the Building Commissioner denied the plaintiffs' request, concluding that the permit "was issued legally and lawfully" according to the bylaws.  October 19, 2004 letter, **Attachment 2 to Exhibit 5**.

On October 27, 2004, the plaintiffs filed an appeal of the Building Commissioner's denial of the enforcement request with the ZBA. **Exhibit 5**. After public hearing, the ZBA denied the plaintiffs' request for revocation of Ms. Newman's building permit on the grounds that the Building Commissioner was authorized to issue the permit to Ms. Newman under the bylaws and that the permit had issued six years before.  Complaint, ¶¶ 85-86; Decision of the Board of Appeals, **Exhibit 6**.  The plaintiffs filed the instant complaint in the Barnstable

2

Superior Court appealing the ZBA's decision. The complaint was removed to this Court.

The plaintiffs do not contend that the modifications to Ms. Newman's property have harmed their property. Allen Depo, pp. 12-13, 16. Rather, the plaintiffs' complaint about the permit is procedural. Id. They complain that Ms. Newman did not have to obtain a special permit or variance for her construction or go through the ZBA, while town counsel (not the ZBA) has indicated to them that they will have to obtain a special permit for their construction. Cordi Allen Depo, pp. 236-241; Allen Depo, p. 17.

The plaintiffs have not gone before the ZBA with respect to their property, and the ZBA has not made any decisions regarding their property. Cordi Allen Depo, pp. 235-236. But, the plaintiffs contend they are treated differently in such matters in the Town because Ms. Cordi-Allen is Lebanese while, they've been told, Ms. Newman and many members of the town's boards are Jewish. Cordi-Allen Depo, pp. 75-80, 115-116. According to the plaintiffs:

> "Ms. Cordi-Allen is a Lebanese-American who is proud of her national origin and has made such ancestry known to many within the Truro community …. The middle eastern states of Lebanon and Israel have had significant disputes over the last 30 years with the Israeli army occupying parts of Lebanon for years. Politics in Israel are dominated by members of the Jewish faith. It is Ms. Cordi-Allens [sic] contention that, within the Town of Truro, a significant if not controlling number of members of the Conservation Commission, Zoning Board of Appeals and town government are members of the Jewish religion that apply different standards for non-jews than for jews. In particular, as a Lebanese-American, Ms. Cordi-Allen believes that she has been treated differently than like situated persons due to her Lebanese background."[2]

Plaintiffs' Answers to Interrogatories, No. 5, **Exhibit 7.**

---

[2]    Ms. Cordi-Allen is 50% Christian Lebanese and 50% Italian. Mr. Allen is not Lebanese.  Cordi-Allen Depo, pp. 143-144; Allen Depo, p. 26.

According to the plaintiffs, "people who are Jewish get permits" while they don't, and the only difference is that Ms. Cordi Allen is Lebanese. Cordi Allen Depo, pp. 137-140. The plaintiffs don't know whether Ms. Newman or any members of the ZBA are Jewish. Cordi Allen Depo, pp. 177, 187-188; Allen Depo, p. 20. They're not sure that the majority of the board members in town are Jewish. Cordi Allen Depo, p. 185; Allen Depo, p. 27.

The plaintiffs have never heard any member of any town board say anything about Ms. Cordi-Allen's Lebanese descent, nor have they heard them say anything about Lebanese individuals that was derogatory or offensive. Cordi-Allen Depo, pp. 121-124; Allen Depo, p. 26. They really don't know that any of the boards took into account that Ms. Cordi-Allen was Lebanese when they made decisions about their property. Allen Depo, p. 28. The plaintiffs just feel they've been treated differently since they purchased their property, 5 Yacht Club Road, in 1996. Allen Depo, p. 17, 28-29.

The plaintiffs' property is adjacent to Ms. Newman's but closer to the water and Pamet Harbor. Complaint, ¶ 12. See Subdivision Plan of Land, **Exhibit 8** (showing plaintiff's property, "C", and Newman's, "B"). Their property consists of a waterfront boathouse and approximately .561 acres of land. Id.; Real Estate Advertisement, **Exhibit 9** (third picture down, see Cordi-Allen Depo, pp. 252-253). The structure is about 400-500 feet in size. Cordi Allen Depo, p. 204.

Years prior to plaintiffs' purchase, in December 1992, the Town's Board of Health had granted the prior owner waivers for the installation of a Title V septic systems, subject to certain conditions, including a one-bedroom restriction.[3]

---

[3]     Specifically, the letter granting the waiver stated that, "[r]egardless of the capabilities of the Title V system, the dwelling will be restricted to a one (1)

When the plaintiffs purchased the property for $145,000 in March 1996, they were aware that the septic system on the property only had the capacity to be used for a one-bedroom dwelling. Cordi Allen Depo, pp. 225-235, 253-255.[4]  The plaintiffs did not inquire prior to their purchase whether they could expand the structure on their property or whether the lot was "buildable." Cordi Allen Depo, pp. 225-235; Allen Depo, pp. 31-37, 42-45, 51-56.  Putting an addition on wasn't a priority for them at the time. Allen Depo, p. 36.

That Fall though, the plaintiffs filed a waiver from the requirements of Title V to permit construction of a home with more than one bedroom. **Exhibit 11.**  The plaintiffs did not appeal that denial, but wrote to the Town Manager claiming that the denial of their applications was discriminatory because another owner, the Zawaducks, were allowed to "build their 4 bedroom home in the harbor area." Letters from plaintiffs dated October 20, 1996 and November 4, 1996, **Exhibit 14.**

About six months later, in April of 1997 the plaintiffs, through David B. Lajoie of Felco, Inc., again filed an application with the Board for variances to expand the septic system to accommodate a four-bedroom dwelling.  The plaintiffs' plans show that the existing boathouse was to become an "accessory building" and that a new structure was to be built on the property.  April 7, 1997 letter from FELCO, Inc. to Board of Health, with attachments, **Exhibit 15.** The Board of Health again voted to deny the plaintiffs' requests for variances on the

---

bedroom residence." Letter dated December 11, 1992 to Mr. Lajoie from the Board of Health, **Exhibit 10.**  As plaintiffs' attorney has acknowledged, there was no requirement at such time that a conditioned variance be recorded with the Registry of Deeds.  Board of Health Minutes of June 4, 1997, **Exhibit 11.**

[4]    Prior to their purchase, the realtor for the property told the plaintiffs that there was a one bedroom restriction on the property, and gave them the letter from the Board of Health that contained the condition. Affidavit of Nicholas Brown, **Exhibit 13.**

5

septic. **Exhibit 13**; Board of Health Meeting Minutes, June 11, 1997, **Exhibit 16**. The plaintiffs appealed to the Superior Court which ruled, in March 1999, ruled that the septic system variances were constructively granted because the Board had failed to provide a written statement of reasons within the statutorily required time. See Complaint, ¶ 40.

In June 1999, the plaintiffs then applied to the Commonwealth of Massachusetts Department of Environmental Protection ("DEP") for approval of their variance, as required. Plaintiffs' Answers to Interrogatories, No. 5. By decision in July 1999, the DEP denied the plaintiffs' applications for Title V variances, finding that the property could not support a four bedroom proposal, and directing them to submit additional information by a certain date. DEP July 27, 1999 Decision, **Exhibit 17.**[5] The Board of Health did not received further information or documents from the plaintiffs on this matter.

On June 8, 2000, the DEP issued the plaintiffs a superseding order of conditions, approving the plaintiffs' proposal, but with certain conditions and "with the right ... to raise additional issues and present further evidence as may be appropriate." Superceding Order of Conditions, **Exhibit 18**. The plaintiffs' proposal by that time included the construction of a single family dwelling, septic system with a FAST unit, deck, pool, garage, driveway and related appurtenances. Id. Additionally, the existing structure was to be slightly relocated. Id. The Conservation Commission had never received copies of the plan until after the

---

[5]    The plaintiffs also applied to the DEP in seeking to reinstate a license for and to extend a pier on their property. Cordi Allen Depo, pp. 259-260. The DEP denied the permit. Id. The plaintiffs claim that "[s]omebody, something got the DEP" in this respect. Id. The plaintiffs filed an adjudicatory proceeding to appeal the denial.

superceding order of conditions was issued. Letter from Town Counsel to DEP dated June 19, 2000, **Exhibit 19**; Pajaron Affidavit, ¶ 14.[6]

The plaintiffs' plan proposes constructing (1) a new, 1512 s.f. single family dwelling, with (2) a new attached garage of approximately 1750 s.f. in area, a (3) second dwelling 640 s.f. in area, (4) an inground pool of 450 s.f. in area, together with (5) surrounding decks, a proposed driveway, and (6) an upgraded Title V system. Pajaron Affidavit, ¶ 13. The total square footage of both dwellings, the garage and the pool is approximately 4352 s.f. in area. Id. All construction is proposed on a solid foundation with concrete walls. Id. Further, construction is proposed to take place within approximately 17' of the Mean High Water on the plan at its closest location and within 3' of the top of a Coastal Bank shown on the plan. Id. The flood elevation is at 12' while construction is proposed between 8' and 10'. Id.

The plaintiffs identify the Newman, Landis, Perry and Sexton properties as being similarly situated properties on which construction has been allowed. Allen Depo, pp. 29-31. They acknowledge though that Ms. Newman's property is further from the water than their property. Cordi-Allen Depo, p. 31. They also acknowledge that (1) the structure on Ms. Newman's property has over a 100 foot setback from the water line, Allen Depo, pp. 30-31, and (2) Ms. Newman's

---

[6]    The Town filed a request for adjudicatory hearing on this order. **Exhibit 19**; Pajaron Affidavit, ¶¶ 12, 13 and attachment F thereto. The proposal is pending review in an administrative proceeding at the DEP. Pajaron Affidavit, ¶ 15. The Town of Truro also filed a Complaint in the Barnstable Superior Court pursuant to M.G.L. c. 30A, Civil Action No. 2001-00347, which is currently pending. In that action, the DEP joined the Town in seeking a remand of the matter back to the DEP because of new information. The DEP no longer agrees that the plaintiffs can construct per their plan. Cordi Allen, pp. 218-219.

modifications are smaller than their proposal. Id., p. 31. Indeed, the Newman proposal involved the relocation of the pre-existing 2 bedroom dwelling, a 90 s.f. addition, and an upgraded septic system. Pajaron Affidavit, ¶ 7. The dwelling is located over 180' from Mean High Water and 145' from the top of the bank. Id. The proposal shows a crawl space foundation with break-away panels. Id.

The plaintiffs likewise acknowledge that the structure on Ms. Landis' property also has a setback of 100 feet or more from the water, and that her construction also is smaller than what they seek. Allen Depo, p. 31.  The Landis proposal involved an addition to an existing dwelling approximately 750 s.f. in area and the installation of an upgraded septic system. Pajaron Affidavit, ¶ 10. The addition was proposed to be located approximately 190' from the Mean High Water. Id. The flood zone elevation is at 12'. The house was proposed to be constructed with topography at elevation 12', but the foundation for the house was proposed on pilings to be elevated 2' above grade; i.e. elevated over 14'. Id.[7]

So, too, the plaintiffs acknowledge that the Perry property is not as close to the water as theirs. Allen Depo, p. 30.  The Perry's proposal involves the construction of a one bedroom dwelling, about 800 s.f. in area, to be constructed 78' from a tidal creek, with a dirt road lying in between. Pajaron Affidvit, ¶ 2. The construction is proposed to be on wood piling foundation, with a top of piling finished elevation of 12', leaving a minimum of 2' between the bottom of the dwelling and the landform below. Id.

The proposal for the Sexton property meanwhile, which abuts Cape Cod Bay, included the addition of an approximately 1025 s.f. addition to their pre-

---

[7]     Ms. Landis obtained a special permit for her construction. See Attachment 1 to **Exhibit 5** (Landis special permit appended to letter).

8

existing dwelling and a 2 car garage, all of which are to be constructed well over 100' from Mean High Water. Pajaron Affidavit, ¶ 4. The proposed addition and garage were to be constructed on "piers or piles." Id.

For some years, the Town had been investigating whether to take by eminent domain the tidal flats of certain property owners abutting Pamet Harbor. Cordi Allen Depo, p. 270; Affidavit of Roland Breault, ¶ 13, **Exhibit 20**. The Town issued all affected owners notice of the intent to take, and asked the owners to undertake negotiations with the Town relative to the amount of compensation. **Exhibit 20**, ¶ 14. Like others in the area, the plaintiffs received such a letter. Cordi Allen Depo, pp. 246-248. All owners but the plaintiffs responded to the Town's invitation to negotiate agreements. **Exhibit 20**, ¶ 15. For almost two years, the Town negotiated with the property owners and reached agreement on all parcels except the plaintiffs. **Exhibit 20**.

The Order of Taking was recorded on February 15, 2002. **Exhibit 20**, ¶ 26 and attachment thereto. The plaintiffs and their neighboring Yacht Club were offered less than other property owners because both had existing piers within the tidelands area, which they were permitted to maintain after the taking. Id., ¶ 28; Cordi Allen Depo, pp. 272, 312. The other private property owners did not have existing piers associated with their properties that they could maintain afater the taking and thus their damages award were larger. **Exhibit 20**, ¶ 28. The plaintiffs were offered $2,500 for the tidal flats on their property, but they didn't take it. Cordi Allen Depo, pp. 268-269. They are the only property that did not negotiate with the town and accept compensation. The plaintiffs have an eminent domain lawyer and a pending lawsuit regarding this taking. Id., p. 269. This complaint was filed in Barnstable Superior Court in 2003, C.A. No. 03-00404.

## II. Argument

### A. Summary Judgment Standard.

As discussed <u>infra</u>, summary judgment is appropriate here because "the pleadings, depositions, answers to interrogatories, and admissions on file" show that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See <u>Hinchey v. Nynex Corp.</u>, 144 F.3d 134, 140 (1st Cir. 1998).

### B. The Defendants are Entitled to Summary Judgment in Their Favor On All Counts of the Complaint.

The plaintiffs brought suit against the defendants appealing from a decision of the Zoning Board of Appeals upholding the building commissioner's issuance of a building permit to a property owed by defendant Newman in 1998. The plaintiffs' complaint claims an appeal from that decision under G.L. c. 40A, § 17 (Count I). In addition, they allege violation of their federal and state civil rights (Counts II and III), claiming the defendants discriminated against them based on Mrs. Allens' national origin and thus violated their equal protection and due process rights. The plaintiffs' complaint also includes counts for "reversal of eminent domaint" (Count IV) and declaratory judgment (Count V).

### 1. The Defendants are Entitled to Summary Judgment on the Plaintiffs' Count under c. 40A, § 17.

The defendant Brooke Newman has filed a motion for summary judgent with this Court which addresses the plaintiffs' c. 40A claim. The defendants ZBA and Town incorporate those arguments here by this reference, as if they were fully set forth herein. In addition, the defendants ZBA and Town make the following arguments:

### a. The Chapter 40A Claim is Untimely.

10

The plaintiffs claim that the issuance of the building permit to defendant Newman in October 1998 "exceeded the authority of the Building Commissioner." Complaint, ¶ 91. Any appeal regarding that permit, however, is mooted by the six year statute of limitations contained in M.G.L. c. 40A, § 7. Section 7 specifically required that the plaintiffs' civil action asserted here be commenced within six years of the alleged violation of law -- the issuance of the building permit, according to the plaintiffs. See G.L. c. 40A, § 7. In pertinent part, § 7 states that, if real property has been improved, as the Newman's has here, "no action, criminal or civil," shall be maintained unless commenced within six years." See Hall v. Provincetown Zoning Board of Appeals, 56 Mass. App. Ct. 1103, 549 N.E.2d 433 (2002) ("... any aggrieved party had only six years during which to file for relief in Superior Court and record notice as required under G.L. c. 40A, § 7"). The statute makes specific reference to the timing of a civil or criminal action, apart from any administrative action. See Cumberland Farms, Inc. v. Zoning Board of Appeals of Walpole, 61 Mass. App. Ct. 124, 128, 807 N.E.2d 245 (2004)(Section 7 limitations period applies to civil or criminal actions).

Here, the building permit issued in October 1998. The plaintiffs' claim that the permit should not have issued and was "procedurally defective." **Exhibit 5.** The plaintiffs were aware of the permit and the lot size in 1998. Yet, they plaintiffs did not file this action until February 2005, well over 6 years later. The plaintiffs' c. 40A claim thus is time-barred.

### b. The Plaintiffs Lack Standing to Seek Administrative or Judicial Review under c. 40A, § 17.

General Laws c. 40A requires that a citizen have standing to compel review of a building commissioner's enforcement of the zoning act. See Green v. Board of

11

Appeals of Provincetown, 404 Mass. 571, 572, 536 N.E.2d 584 (1989). In so
requiring standing, the zoning act

> "recognize[s] the distinction between a right of a nonaggrieved person to
> [request] enforcement (see § 7) and the greater right of an aggrieved person
> to start an administrative proceeding seeking to compel enforcement (see §
> 8). Under § 7, a person, in writing may request a building inspector to
> enforce the zoning by-law and is entitled to a response in writing. The
> person need not be aggrieved. To go beyond that stage, [the] party must
> [have standing]."

Id. at 573.

Chapter 40A requires that "a person must be aggrieved in order to obtain
relief through administrative and judicial appellate processes." Id. Accordingly,
although any member of the public possesses the "right to request the [building
commissioner] to enforce [a zoning] by-law under G.L. c. 40A, § 7 ... [only a] party
... aggrieved by the [commissioner's] decision [has the] right to seek
administrative relief from the board under G.L. c. 40A, §§ 8 and 15, and ... a right
to obtain judicial review pursuant to G.L. c. 40A, § 17. Id. at 574. See G.L. c. 40A, §
17 (person must be "aggrieved").

Here, the plaintiffs asked the building commissioner for enforcement. He
denied the request. That denial could only be appealed to the board of appeals by
a person with standing; i.e. a person who was "aggrieved." Standing is
jurisdictional. Marashlian v. Zoning Board of Appeals, 421 Mass. 719, 721, 660
N.E.2d 369 (1996).

Abutters of the property whose permits are being challenged are
considered to have presumptive standing, but once that abutter's standing is
challenged, with a showing of lack of aggrievement, the presumption disappears.
The question of standing then is based on the evidence, without benefit of the

presumption. <u>Denneny v. Zoning Board of Appeals of Seekonk</u>, 59 Mass. App. Ct. 208, 212, 794 N.E.2d 1269 (2003). Such is the case here.

The plaintiffs' presumptive standing is challenged by the facts of and the timing of their enforcement request and their appeal here -- which reveal a lack of aggrievement. The plaintiffs waited almost six years to pursue an enforcement request with the building inspector, even though they were aware of Ms. Newman's permit and of construction since 1998. Moreover, as noted above, the plaintiffs do not seriously contend that the modifications to Ms. Newman's property have harmed their property.

Given such challenge, the presumption of the plaintiffs' standing disappears and the plaintiffs must "put forth credible evidence to substantiate claims of injury to their legal rights." <u>Marashalian</u>, <u>supra</u> at 723. A plaintiff's injury must be sufficiently particularized and distinct from general community interests. <u>See</u> <u>Nickerson v. Zoning Board of Appeals</u>, 53 Mass. App. Ct. 680, 682, 761 N.E.2d. 544 (2002) (noting particularized nature of claim is "separate and essential element of standing" as to which court should make specific findings). Further, the injury claimed by the plaintiff also must be "legitimately within the scope of the zoning laws." <u>Marashlian</u>, 421 Mass. at 721. The plaintiffs have not and cannot put forward such evidence.

The plaintiffs' complaint about Ms. Newman's permit is that she wasn't required to obtain a special permit or variance for her construction. They claim that a special permit was required for the work under the bylaws because of the size of the lot. <u>See</u> Exhibit 5. This claim or contention – while sufficient for § 7 purposes -- was not sufficient to confer standing upon the plaintiffs for purposes of administrative review under c. 40A, § 8 and is not sufficient for purposes of

13

judicial review under c. 40A, § 17. See Denneny, 59 Mass. App. Ct. at 215 (oversight of municipality's zoning policies is responsibility of duly authorized municipal officials; its not a task for private attorneys general who do not themselves have cognizable legal interest affected by the zoning action).

Accordingly, any presumption of standing has been rebutted, and because the plaintiffs have not and cannot make a legally tenable claim of aggrievement sufficient to confer standing, this Court should enter summary judgment in favor of the defendants on this claim on this alternative basis.

### c.   Defendants Are Otherwise Entitled to Summary Judgment on the c. 40A Appeal Because Plaintiffs Cannot Establish Its Merits

Even if the plaintiffs had asserted a timely court challenge to the permit and had the necessary standing to seek administrative and judicial review under c. 40A, the defendants are entitled to summary judgment on this count because the plaintiffs have not established that the Zoning Board decision, upholding the Building Commissioner's denial of their request for revocation of Ms. Newman's building permit, was improper.

The Building Commissioner denied the plaintiffs' request for revocation of the permit, finding that it was legally and lawfully issued in 1998 according to the Section VIII(B)(2) of the Town's Bylaws, attached as **Exhibit 21.**[8]  Pursuant to that section, which pertains to "[r]epairs, alterations," the Building Commissioner had the authority and discretion to issue the permit for Ms. Newman's proposal upon determination

> "that the proposed repair, reconstruction, alteration or structural change of a preexisting, nonconforming, single family or two-family residential structure

---

[8]      That section is renumbered as Section 30.7(B) of the current version of the Zoning Bylaws, as attached.

will not be substantially more detrimental to its neighborhood than the existing nonconforming structure and will not increase the nature or extent of the nonconformity ....”

Being so authorized to do so, the Building Commissioner made such determination by virtue of the issuance of the permit in 1998.

The plaintiffs have argued that the Building Commissioner lacked authority to act under Section VIII (B) (2) because Section VIII(B)(1) of the Bylaw, which references special permits, applied to Ms. Newman's proposal. Section VIII(B)(1)[9], however, pertains to “[c]ontinuance” of a nonconforming use, providing that as long as the structure or use was lawfully constructed or begun, and lots were lawfully created, they may continue to be used in the same manner and for the same purposes.

Ms. Newman's use has continued in the same manner and for the same purposes in the wake of her reconstruction, and thus is permitted by Section VIII(B)(1). See Affidavit of Brooke Newman, attached to Defendant Newman's Motion for Summary Judgment. Her use has not been altered or extended by virtue of the reconstruction, and thus the remaining provisions of Section VIII (B)(1) do not apply. Rather, it is evident from review of the Bylaw language, that her proposal involved the reconstruction and alteration of a pre-existing, nonconforming single family structure, triggering application of § VIII(B)(2).

In contrast, the plaintiffs' proposals involves not only the reconstruction and alteration of their pre-existing structure, but the addition of an entirely new, two-story structure on their property that is to act as the dwelling in lieu of the preexisting structure. The preexisting structure is proposed to be used as an

---

[9]     This section is renumbered as Section 30.7(A) in the current version of the Bylaws. Exhibits 21 and 22.

"accessory building." Clearly, this presents a different scenario than Ms. Newman's in terms of the zoning bylaw provisions.

### 2. The Defendants are Entitled to Summary Judgment in their Favor on the Federal Civil Rights Claim

In Count II, the plaintiffs allege that they "have been discriminated against due to Ms. Allens' national origin in that the Town ... has applied differing standards to the applications for regulatory permits to [plaintiffs] than they hve applied to others of non-Lebanese descent, resulting in a violation of the[ir] equal protection and due process rights ....." Complaint, ¶ 96. The defendants are entitled to summary judgment on this claim because (1) any such contention is time-barred and (2) the plaintiffs have failed to establish such claim.

### a. The Plaintiffs' Claim, Based on Discrimination or Unequal Treatment, is Time-Barred.

Section 1983 creates a private right of action for violations of federally protected rights. Because it has no statute of limitations provision, § 1983 claims "borrow[] the appropriate state law governing limitations unless contrary to federal law." Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003). In Massachusetts, the statute of limitations governing civil rights claims requires that the action be commenced within the three years following the date when the cause of action accrues. Messere v. Murphy, 32 Mass.App.Ct. 917, 585 N.E.2d 350 (1992), citing G.L. c. 260, § 5B.

It has been held that "[a]lthough the limitations period is determined by state law, the date of accrual is a federal law question." Carreras-Rosa v. Alves-Cruz, 127 F.3d 172, 174 (1st Cir. 1997). Section § 1983 claims accrue "when the aggrieved party knows or has reason to know of the injury which is the basis for his action." Rodriguez Narvaez v. Nazario, 895 F.2d 38, 42 n. 5 (1st Cir. 1990).

16

Here, the plaintiffs have testified that they have been treated differently and discriminatorily since they purchased the property in 1996. Also, in letters to the Town from October 1996, they say that "[d]iscrimination occurred" when another family was allowed to build in the harbor area and when the Yacht Club was allowed to entertain many people at one time without a Title V septic system. **Exhibit 14**. "Also, the fact our abutters have more bedrooms than we do… is also discriminatory." Id. In a letter from November 1996, the plaintiffs said that "[I]t seems very discriminatory that only the 'boathouse' [the plaintiffs' property] has any so called restrictions." Id. By late 1996 then, the plaintiffs believed they being treated differently in terms of the permitting process. Their complaint in this case alleging such a claim, however, wasn't filed until February 2005, more than three years later. The claim is thus time-barred on this basis.[10] The defendants are entitled to summary judgment on this claim based on the statute of limitations.

### b. In Any Event, the Plaintiffs Have Otherwise Failed to Establish a Civil Rights Violation

Even if the plaintiffs had asserted a timely claim, the defendants are entitled to summary judgment on it in their favor because the plaintiffs have failed to establish such a claim.

There are two essential elements to a § 1983 claim: First the challenged conduct must be attributable to a person acting under color of state law; second, the conduct must have worked a denial of rights secured by the Constitution or by federal law. Pariseau v. City of Brockton, 135 F. Supp. 2d 257, 262 (D. Mass. 2001).

---

[10]    It also bears note that the plaintiffs claim the Town applied differing standards to their applications for regulatory permits than to others, but the complaint does not detail any such applications for permits having been considered during the three years preceding the complaint.

The second element requires the plaintiff to prove not only a deprivation of federal right, but also that the defendants' conduct was a cause in fact of the alleged deprivation. Id. Here, the plaintiffs claim here that the Town has applied differing standards to permit applications to the plaintiffs than they have to those of non-Lebanese descent, depriving them of their right to equal protection. Complaint, ¶ 96.

In order to establish an equal protection claim, a plaintiff must prove that, compared with others similarly situated, they were selectively treated based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. See Barrington Cover Ltd. Partnership v. Rhode Island Housing and Mortgage Fin, Corp., 246 F.3d 1, 7 (1st Cir. 2001); 18 Massachusetts Prac. § 401.

The plaintiffs allege that the Town treated them differently based on Ms. Cordi Allen's national origin, Lebanese. They have offered absolutely no evidence to support this contention. There is no evidence to support their contention that the Town or any board or member took or didn't take any action regarding the plaintiffs based on Ms. Cordi Allen's national origin. The plaintiffs' own testimony, as discussed in detail above, reveals that their claim in this respect is based solely on their conjecture and speculation. Their attempt to analogize permitting decisions Truro with the situation in the Middle East has no basis at all in fact. See Exhibit 7, No. 5; Cordi Allen Depo, pp. 171-173.

A plaintiff, however, "may not prevail simply by asserting an inequity and taking on the self-serving conclusion that the defendant was motivated by a discriminatory animus". 18 Massachusetts Practice § 401. This is precisely what the plaintiffs do here. They have produced no evidence of discriminatory intent.

18

"Th[is] burden is an onerous one" that the plaintiffs have not met it. Pariseau v. City of Brockton, 135 F.Supp.2d 257, 264 (D. Mass. 2001) (plaintiff must show that "the decisionmaker ... selected or reaffirmed a course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."). Their speculation as to discrimination is insufficient to ward of summary judgment on their civil rights claim. See Burns v. State Police Ass'n of Mass., 230 F.3d 8, 9 (1st Cir. 2000) (party opposing summary judgment "may not rely on conclusory allegations and unsupported speculation ... even when elusive concepts like motive or intent are at issue...."); Rogan v. City of Boston, 267 F.3d 24 (1st Cir. 2001) (plaintiff who aspires to ward off summary judgment cannot rest on conclusory allegations, empty rhetoric, unsupported speculation).

The plaintiffs' claim also fails on the "similarly situated" prong. See Samaad v. City of Dallas, 940 F.2d 925, 941 n. 31 (5th Cir. 1991) (a"similarly situated" allegation is essential to a viable equal protection claim). It is this comparative element, however, that distinguishes the Equal Protection Clause. See Ross v. Moffitt, 417 U.S. 600, 609, 94 S.Ct. 2437, 41 L.Ed.2d 341(1974). The plaintiffs have not and cannot show that they were "similarly situated" to others who were treated differently. Lakeside Builders, Inc. v. Planning Bd. Of Franklin, 2002 WL 31655250 (D. Mass. 2002) (dismissing claim when insufficient specifics were alleged to support conclusory allegation that plaintiff was "similarly situated" to others who were treated differently). The plaintiffs identify other properties as being "similarly situated" and allege they received different treatment, but they failed to provide the requisite specifics needed to make the comparison.

What is clear is that the plaintiffs purchased a 20' x 20' "boathouse" on the waterfront that had an existing one-bedroom restriction imposed by the Board of Health in connection with a prior owner's request for a septic variance. The imposition of this restriction thus had nothing to do with the plaintiffs or their national origin. It was in place before they bought the boathouse. None of the other properties identified by the plaintiffs have a similar backdrop to their proposed construction.

Further, none of the other properties, as discussed above, involve construction of the magnitude sought by the plaintiffs. The plaintiffs sought to escape the one-bedroom restriction, and to turn the boathouse into an accessory building to a new four-bedroom dwelling, garage, deck and pool. The plaintiffs thus sought to add multiple new structures (separate from their existing one) totaling approximately 4300 s.f., while Newman, Landis, and Sexton simply sought to add to their preexisting structures with additions of 90' s.f., 800 s.f., and 900 s.f. respectively. **Exhibit 2**. The Perry property meanwhile proposed the construction of a one bedroom dwelling with a footprint of 810 s.f. Id.

Importantly, the plaintiffs' proposed construction lies within 100' of the Mean High Water mark in Pamet Harbor while the other structures are beyond the 100' range. Id. This distinction and the closer proximity of the plaintiffs' property to the water is significant in terms of the zoning, conservation and board of health issues.[11] In these respects, these other properties cannot be considered

---

[11]    The plaintiffs' property has been at least partially submerged during heavy rains, high tides and intense storms. See Affidavit of Brooke Newman, supra.

20

as "similarly situated" for purposes of comparing the Town's handling of
permitting issues.

Further, and given these significant distinctions, the plaintiffs cannot
establish that the defendants' alleged different treatment with respect to their
applications and requests, when compared with these other properties, had no
"rational basis." See generally Village of Willowbrook v. Olech, 528 U.S.562, 564,
120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (plaintiff must show he has been
intentionally treated differently from others similarly situated and without any
rational basis for the difference in treatment). The "no rational basis" standard
requires that the plaintiffs "present evidence that the defendant deliberately
sought to deprive [them] of the equal protection of the laws for reasons of a
personal or improper nature unrelated to the duties of the defendant's position."
Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000); accord Lakeside
Builders, Inc., supra. This showing requires "more than just a perceived difference
in treatment for which the plaintiff has received an unsatisfactory explanation."
Id. It is a very high standard and must be scrupulously met. Rubinovitz v.
Rogato, 60 F.3d 905, 911 (1st Cir. 1995). Such a showing is necessary to prevent
transforming every day, run-of-the-mill zoning, permitting or licensing issues into
cases of constitutional right. Id; Village of Willowbrook v. Olech, 528 U.S. at 565
(Breyer, J., concurring).

The plaintiffs have failed to make such showing here. Their claim of
national origin discrimination fails and they have not alleged or demonstrated any
"bad faith or malicious intent to injure" in manner to survive summary judgment.
Cordi Allen Depo, pp. 243-245. Rather, it is apparent that the plaintiffs' equal
protection claim rests solely upon their perception that they have been treated

differently by the Town on their permitting requests. But, the mere existence of disparate treatment does not furnish an adequate basis for an inference that the discrimination was impermissibly motivated. See Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997). Even arbitrariness of a decision is not, without more, sufficient to state an equal protection claim. If it were, there would be a viable equal protection claim whenever differential treatment was the result of "discretion honestly (even if ineptly-even if arbitrarily) exercised." Willowbrook, supra at 565, 120 S.Ct. 1073 (Breyer, J. concurring) . Section 1983, however, is not an avenue for review of local zoning and planning disputes. Raskiewicz v. Town of New Boston, 754 F.2d 38 (1st Cir. 1985) (federal courts do not sit as super zoning board or zoning board of appeals).

The plaintiffs have thus failed to establish the claim of a violation of equal protection, and their civil rights claim fails.[12]

The plaintiffs' stated civil rights claim fails for other reasons as well. The named defendants are the members of the ZBA and the Town. No liability attaches to a governmental agency like the Town pursuant to a mere respondeat superior theory. Monell v. Dep't of Soc. Services, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978). Rather, there must be "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." Britton v. Maloney, 901 F. Supp. 444, 449 (D. Mass. 1995). For a plaintiff to prevail on a claim of municipal liability under § 1983, they must show 1) there existed a municipal custom or policy of deliberate indifference to the commission of constitutional violations and

---

[12]    The absence of a constitutional injury dooms the plaintiff's claim, making it unnecessary to consider the other obstacles (e.g., qualified immunity) that block his path. Rogan v. City of Boston, 267 F.3d 24 (1st Cir. 2001).

2) that custom or policy was the cause of, and moving force behind, the particular constitutional deprivation of which plaintiffs complains. Walsh v. Town of Lakeville, ___ F.Supp.2d ___, 2006 WL 1216463 (D. Mass. 2006).

No constitutional deprivation has been shown here, as discussed. And, certainly then, the plaintiffs have offered no evidence that the Town had any municipal custom or policy of deliberate indifference to the commission of constitutional violations of the kind alleged (i.e. unequal treatment as between Lebanese and Jews). The plaintiffs' equal protection claim against the Town fails.

As for the ZBA, the other defendant, the plaintiffs have acknowledged that they have not filed any applications to the ZBA relative to their property and that the ZBA has not taken any action with respect to their property. The ZBA then cannot be said to have applied differing standards as between the plaintiffs and others. The plaintiffs' equal protection claim against the ZBA fails on this additional basis.

### 3.   This Court Need not Exercise Supplemental Jurisdiction Over the State Civil Rights Claim But, Should It Do So, the Defendants are Entitled to Summary Judgment on that Count As Well.

Should this Court enter summary judgment in defendants' favor on the plaintiff's § 1983 claim, it could decline to exercise supplemental jurisdiction over the state law claims, including the count under the Massachusetts Civil Rights Act (MCRA). See 28 U.S.C. § 1367(c). But, should it exercise such jurisdiction, the defendants are entitled to summary judgment on such claim.

First, this claim has the same statute of limitation issue as discussed above in the context of § 1983, and it thus too is time-barred. Summary judgment is thus warranted in favor of the defendants on this basis.

Moreover, under Massachusetts law, a municipality cannot be sued under the Massachusetts Civil Rights Act. See Kelley v. LaForce, 279 F.3d 129, 139 n. 8 (1st Cir.2002). See also LeBeau v. Town of Spencer, 167 F.Supp.2d 449, 455 (D. Mass. 2001). "A municipality is not a 'person' covered by the Massachusetts Civil Rights Act...." Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591-92 (2001). Therefore, the plaintiffs' state civil rights claim against the Town is misplaced, and summary judgment should enter in its favor on this count. So, too, summary judgment should enter in favor of the ZBA defendants sued in their official capacities. See O'Malley v. Sheriff of Worcester County, 415 Mass. 132, 141 n. 13, 612 N.E.2d 641 (1993).

In any event, even if there were a basis to consider the MCRA claim, it bears note that the MCRA creates no substantive civil rights; rather, it provides a mechanism for obtaining relief from the interference, or attempted interference, with rights conferred by Federal or Massachusetts law. See G.L. c. 12, §§ 11H, 11I. To prove a claim under the MCRA, a plaintiff must show an interference, or attempted interference, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of Massachusetts, by means of "threats, intimidation, or coercion." Howcroft, supra at 594. As discussed above, the first prong has not been established in this case,[13] and the claim under the MCRA fails on this additional basis.

Further, the plaintiffs have failed to produce sufficient evidence of the

---

[13]    See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23, 473 N.E.2d 1128 (1985) (requirements under MCRA are coextensive with § 1983 except that Federal statute requires state action). Also, qualified immunity principles under § 1983 apply equally to claims under MCRA. Howcroft, supra.

second prong -- "threats, intimidation, or coercion," defined in <u>Planned</u>

<u>Parenthood League of Mass., Inc. v. Blake</u>, 417 Mass. 467, 474, 631 N.E.2d. 985

(1994). They make the vague and conclusory assertion that "members of various

boards and commissions" have "used their position of authority" to coerce them

to not develop their property. **Exhibit 7**, No. 9. But, they do not identify any such

members nor do they otherwise detail their claim of "coercion." Thus, even if this

second prong of the MCRA claim were reached, the plaintiffs' allegations on the

same would simply insufficient to ward off summary judgment.

### 4.    Summary Judgment Should Enter in Defendants' Favor on the Eminent Domain Claim

Plaintiffs seek "reversal of eminent domain" in Count IV, alleging it was in

violation of constitutional provisions. As noted, the plaintiffs have an eminent

domain lawyer and a pending lawsuit regarding this taking. <u>Id.</u>, p. 269. This

complaint was filed in Barnstable Superior Court in 2003. The existence of that

prior pending action warrants exercise of this Court's discretion to dismiss of this

count here. <u>Highway Ins. Underwriters v. Nichols</u>, 85 F. Supp. 527 (D.C. Okl.

1949). Indeed, one of the precepts of the federal judicial system is to avoid

determination of constitutional questions by giving the courts of the states

involved the opportunity to pass on the question. <u>Gentry v. Hibernia Bank</u>, 152

F.Supp. 469, 472 (D.C. Cal. 1957).

### 5.    The Plaintiffs Are Not Entitled to Declaratory Judgment.

In Count 5, the plaintiffs seek a declaration that the Town and its Boards and

Commissions have "violated the[ir] constitutionally protected rights." In light of

the above, the plaintiffs are not entitled to such a declaration and this Count too

must fall away.

III.    **Conclusion.**

For the reasons set forth above, summary judgment should enter in favor of

the defendants on all counts of the plaintiffs' complaint.

Respectfully submitted,
The Defendants, Town of Truro, et al,
By their attorneys,

/s/ Deborah I. Ecker
Deborah I. Ecker, BBO# 554623
Deidre Brennan Regan, BBO#552432
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
Dated: May 26, 2006          (617) 880-7100