UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 05-10370PBS

BARBARA CORDI-ALLEN AND )
JOHN ALLEN, )
    Plaintiffs, )
 )
VS. )
 )
JOSEPH R. CONLON, ARTHUR F. HUTLIN, )
NORMAN H. POPE, KEITH S. ALTHAUS, )
And MARINNA MATRICARDI as they are )
Members and collectively the TRURO )
ZONING BOARD OF APPEALS AND THE )
TOWN OF TRURO, MASSACHUSETTS, )
AND BROOKE NEWMAN, )
    Defendants )

**RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS AND SUPPORTING EXHIBITS OF THE DEFENDANTS SUBMITTED IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, the defendants Joseph R. Conlon, Arthur F. Hutlin, Norman H. Pope, Keith S. Althaus, and Marinna Matricardi, as members and collectively the Truro Zoning Board of Appeals and the Town of Truro submit this statement of facts, with supporting attachments.

**Statement of Undisputed Material Facts**[1]

1. This action involves an appeal of the ZBA's denial of the plaintiffs' request for revocation of a building permit issued to defendant Brooke Newman. Complaint, **Exhibit 1.**

---

[1] As required under summary judgment procedure, such facts must be interpreted in favor of the non-moving party. In so stating undisputed material facts, the defendants do not concede or rely on these facts for any purpose other than this motion for summary judgment.

1

2. That permit issued to Ms. Newman on October 28, 1998 in connection with her property at 3 Yacht Club Road in Truro. Complaint, ¶ 24, **Exhibit 1**.

3. Ms. Newman's proposal involved the relocation and alteration of a pre-existing, two bedroom dwelling on her property, a proposed 90 square foot addition, and an upgraded Title 5 compliant septic system. Pajaron Affidavit, ¶ 7, **Exhibit 2**. The structure was proposed on a crawl space foundation with break away panels to meet building code requirements for construction in a flood zone. Id., ¶ 8.

4. No appeal was taken from the issuance of the building permit to Ms. Newman. See, e.g. Allen Depo, pp. 12-13, **Exhibit 3**.

5. Construction began in 1999 on Ms. Newman's property, and is now completed. Complaint, ¶ 32; Pajaron Affidavit, ¶ 8.

6. The plaintiffs have been aware of Ms. Newman's building permit since 1998. Allen Depo, p. 12; Cordi-Allen Depo, pp. 19-20, **Exhibit 4.**

7. In July 2004, they plaintiffs requested that the Building Commissioner revoke Ms. Newman's building permit "because she never obtained a special permit or variance from the Truro Zoning Board of Appeals for the additions allowed under the building permit." July 26, 2004 letter, **Attachment 1** to October 26, 2004 letter at **Exhibit 5**. The plaintiffs claimed that a special permit was required. Id.

8. On October 19, 2004, the Building Commissioner denied the plaintiffs' request, concluding that the permit "was issued legally and lawfully" according to the zoning bylaws. October 19, 2004 letter, **Attachment 2 to Exhibit 5.**

9. On October 27, 2004, the plaintiffs filed an appeal of the denial of the enforcement request with the ZBA. **Exhibit 5.**

10. After public hearing, the ZBA denied the plaintiffs' request for revocation of Ms. Newman's building permit on the grounds that the Building Commissioner was authorized to issue the permit to Ms. Newman under the bylaws and that the permit had issued six years before. Complaint, ¶¶ 85-86; Decision of the Board of Appeals, **Exhibit 6.**

11. The plaintiffs filed the instant complaint in the Barnstable Superior Court appealing the ZBA's decision. The complaint was removed to this Court.

12. The plaintiffs do not contend that the modifications to Ms. Newman's property have harmed their property. Allen Depo, pp. 12-13, 16. Their complaint about the permit is procedural, Id. – that Ms. Newman did not have to obtain a special permit or variance for her construction or go through the ZBA, while town counsel (not the ZBA) has indicated to them that they will have to obtain a special permit for their construction. Cordi Allen Depo, pp. 236-241; Allen Depo, p. 17.

13. The plaintiffs have not gone before the ZBA with respect to their property, and the ZBA has not made any decisions regarding their property. Cordi Allen Depo, pp. 235-236.

14. The plaintiffs contend they are treated differently in such matters in the Town because Ms. Cordi-Allen is Lebanese while, they've been told, Ms. Newman and many members of the town's boards are Jewish. Cordi-Allen Depo, pp. 75-80, 115-116.

3

15. According to the plaintiffs:

    "Ms. Cordi-Allen is a Lebanese-American who is proud of her national origin and has made such ancestry known to many within the Truro community …. The middle eastern states of Lebanon and Israel have had significant disputes over the last 30 years with the Israeli army occupying parts of Lebanon for years. Politics in Israel are dominated by members of the Jewish faith. It is Ms. Cordi-Allens [sic] contention that, within the Town of Truro, a significant if not controlling number of members of the Conservation Commission, Zoning Board of Appeals and town government are members of the Jewish religion that apply different standards for non-jews than for jews. In particular, as a Lebanese-American, Ms. Cordi-Allen believes that she has been treated differently than like situated persons due to her Lebanese background."

    Plaintiffs' Answers to Interrogatories, No. 5, **Exhibit 7.**

16. Ms. Cordi-Allen is 50% Christian Lebanese and 50% Italian. Mr. Allen is not Lebanese. Cordi-Allen Depo, pp. 143-144; Allen Depo, p. 26.

17. According to the plaintiffs, "people who are Jewish get permits" while they don't, and the only difference is that Ms. Cordi Allen is Lebanese. Cordi Allen Depo, pp. 137-140.

18. The plaintiffs don't know whether Ms. Newman or any members of the ZBA are Jewish. Cordi Allen Depo, pp. 177, 187-188; Allen Depo, p. 20. They're not sure that the majority of the board members in town are Jewish. Cordi Allen Depo, p. 185; Allen Depo, p. 27.

19. The plaintiffs have never heard any member of any town board say anything about Ms. Cordi-Allen's Lebanese descent, nor have they heard them say anything about Lebanese individuals that was derogatory or offensive. Cordi-Allen Depo, pp. 121-124; Allen Depo, p. 26. They don't know that any of the boards took into account that Ms. Cordi-Allen was Lebanese when they made decisions about their property. Allen Depo, p. 28.

4

20. The plaintiffs feel they've been treated differently since they purchased their property, 5 Yacht Club Road, in 1996. Allen Depo, p. 17, 28-29.

21. The plaintiffs' property is adjacent to Ms. Newman's but closer to the water and Pamet Harbor. Complaint, ¶ 12. See Subdivision Plan of Land, **Exhibit 8** (showing plaintiff's property, "C", and Newman's, "B"). Their property consists of a waterfront boathouse and approximately .561 acres of land. Id.; Real Estate Advertisement, **Exhibit 9** (third picture down, see Cordi-Allen Depo, pp. 252-253). The structure is about 400-500 feet in size. Cordi Allen Depo, p. 204.

22. Years prior to plaintiffs' purchase, in December 1992, the Town's Board of Health had granted the prior owner waivers for the installation of a Title V septic systems, subject to certain conditions, including a one-bedroom restriction.

23. Specifically, the letter granting the waiver stated that, "[r]egardless of the capabilities of the Title V system, the dwelling will be restricted to a one (1) bedroom residence." Letter dated December 11, 1992 to Mr. Lajoie from the Board of Health, **Exhibit 10.** There was no requirement then that a conditioned variance be recorded with the Registry of Deeds. Board of Health Minutes of June 4, 1997, **Exhibit 11.**

24. When the plaintiffs purchased the property for $145,000 in March 1996, they were aware that the septic system on the property only had the capacity to be used for a one-bedroom dwelling. Cordi Allen Depo, pp. 225-235, 253-255.

25. Prior to their purchase, the realtor for the property told the plaintiffs that there was a one bedroom restriction on the property, and gave them the

5

letter from the Board of Health that contained the condition. Affidavit of Nicholas Brown, **Exhibit 13.**

26. Plaintiffs did not inquire prior to their purchase whether they could expand the structure on their property or whether the lot was "buildable." Cordi Allen Depo, pp. 225-235; Allen Depo, pp. 31-37, 42-45, 51-56. Putting an addition on wasn't a priority for them then. Allen Depo, p. 36.

27. That Fall of 1996, the plaintiffs filed request for waivers from the requirements of Title V to permit construction of a home with more than one bedroom, which the Board of Health voted to deny. **Exhibit 11**.

28. The plaintiffs did not appeal that denial, but wrote to the Town Manager claiming that the denial of their applications was discriminatory because another owner, the Zawaducks, were allowed to "build their 4 bedroom home in the harbor area." Letters from plaintiffs dated October 20, 1996 and November 4, 1996, **Exhibit 14.**

29. In April of 1997 the plaintiffs, through David B. Lajoie of Felco, Inc., again filed another application with the Board for variances to expand the septic system to accommodate a four-bedroom dwelling. The plaintiffs' plans show that the existing boathouse was to become an "accessory building" and that a new structure was to be built on the property. April 7, 1997 letter from FELCO, Inc. to Board of Health, with attachments, **Exhibit 15.**

30. The Board of Health again voted to deny the plaintiffs' requests for variances on the septic. **Exhibit 13**; Board of Health Meeting Minutes, June 11, 1997, **Exhibit 16**.

31. The plaintiffs appealed to the Superior Court which ruled, in March 1999, ruled that the septic system variances were constructively granted because

the Board had failed to provide a written statement of reasons within the statutorily required time. See Complaint, ¶ 40.

32. In June 1999, the plaintiffs then applied to the Commonwealth of Massachusetts Department of Environmental Protection ("DEP") for approval of their variance, as required. Plaintiffs' Answers to Interrogatories, No. 5.

33. By decision in July 1999, the DEP denied the plaintiffs' applications for Title V variances, finding that the property could not support a four bedroom proposal, and directing them to submit additional information by a certain date. DEP July 27, 1999 Decision, Exhibit 17. The Board of Health did not received further information or documents from the plaintiffs on this matter.

34. On June 8, 2000, the DEP issued the plaintiffs a superseding order of conditions, approving the plaintiffs' proposal, but with certain conditions and "with the right ... to raise additional issues and present further evidence as may be appropriate." Superceding Order of Conditions, **Exhibit 18**.

35. The plaintiffs' proposal by that time included the construction of a single family dwelling, septic system with a FAST unit, deck, pool, garage, driveway and related appurtenances. Id. Additionally, the existing structure was to be slightly relocated. Id. The Conservation Commission had never received copies of the plan until after the superceding order of conditions was issued. Letter from Town Counsel to DEP dated June 19, 2000, **Exhibit 19**; Pajaron Affidavit, ¶ 14.

36. The Town filed a request for adjudicatory hearing on this order. **Exhibit 19**; Pajaron Affidavit, ¶¶ 12, 13 and attachment F thereto. The proposal is pending review in an administrative proceeding at the DEP. Pajaron Affidavit, ¶ 15.

37. The Town of Truro also filed a Complaint in the Barnstable Superior Court pursuant to M.G.L. c. 30A, Civil Action No. 2001-00347, which is currently pending. In that action, the DEP joined the Town in seeking a remand of the matter back to the DEP because of new information. The DEP no longer agrees that the plaintiffs can construct per their plan. Cordi Allen, pp. 218-219.

38. The plaintiffs' plan proposes constructing (1) a new, 1512 s.f. single family dwelling, with (2) a new attached garage of approximately 1750 s.f. in area, a (3) second dwelling 640 s.f. in area, (4) an inground pool of 450 s.f. in area, together with (5) surrounding decks, a proposed driveway, and (6) an upgraded Title V system. Pajaron Affidavit, ¶ 13. The total square footage of both dwellings, the garage and the pool is approximately 4352 s.f. in area. Id. All construction is proposed on a solid foundation with concrete walls. Id. Further, construction is proposed to take place within approximately 17' of the Mean High Water on the plan at its closest location and within 3' of the top of a Coastal Bank shown on the plan. Id. The flood elevation is at 12' while construction is proposed between 8' and 10'. Id.

39. The plaintiffs had also applied to the DEP in seeking to reinstate a license for and to extend a pier on their property. Cordi Allen Depo, pp. 259-260. The DEP denied the permit. Id. The plaintiffs claim that "[s]omebody,

something got the DEP" in this respect. Id. The plaintiffs filed an adjudicatory proceeding to appeal the denial.

40. The plaintiffs identify the Newman, Landis, Perry and Sexton properties as being similarly situated properties on which construction has been allowed. Allen Depo, pp. 29-31.

41. Ms. Newman's property is further from the water than their property. Cordi-Allen Depo, p. 31.

42. The structure on Ms. Newman's property has over a 100 foot setback from the water line, Allen Depo, pp. 30-31, and Ms. Newman's modifications are smaller than their proposal. Allen Depo, p. 31.

43. The Newman proposal involved the relocation of the pre-existing 2 bedroom dwelling, a 90 s.f. addition, and an upgraded septic system. Pajaron Affidavit, ¶ 7. The dwelling is located over 180' from Mean High Water and 145' from the top of the bank. Id. The proposal shows a crawl space foundation with break-away panels. Id.

44. The structure on Ms. Landis' property also has a setback of 100 feet or more from the water, and her construction also is smaller than what the plaintiffs propose. Allen Depo, p. 31.

45. The Landis proposal involved an addition to an existing dwelling approximately 750 s.f. in area and the installation of an upgraded septic system. Pajaron Affidavit, ¶ 10. The addition was proposed to be located approximately 190' from the Mean High Water. Id. The flood zone elevation is at 12'. The house was proposed to be constructed with topography at elevation 12', but the foundation for the house was

proposed on pilings to be elevated 2′ above grade; i.e. would be elevated over 14′. Id.

46. Ms. Landis obtained a special permit for her construction. See Attachment 1 to **Exhibit 5** (Landis special permit appended to letter).

47. The Perry property is not as close to the water as the plaintiffs. Allen Depo, p. 30. The Perry's proposal involves the construction of a one bedroom dwelling, about 800 s.f. in area, to be constructed 78′ from a tidal creek, with a dirt road lying in between. Pajaron Affidvit, ¶ 2. The construction is proposed to be on wood piling foundation, with a top of piling finished elevation of 12′, leaving a minimum of 2′ between the bottom of the dwelling and the landform below. Id.

48. The proposal for the Sexton property, which abuts Cape Cod Bay, included the addition of an approximately 1025 s.f. addition to their pre-existing dwelling and a 2 car garage, all of which are to be constructed well over 100′ from Mean High Water. Pajaron Affidavit, ¶ 4. The proposed addition and garage were to be constructed on "piers or piles." Id.

49. For some years, the Town had been investigating whether to take by eminent domain the tidal flats of certain property owners abutting Pamet Harbor. Cordi Allen Depo, p. 270; Affidavit of Roland Breault, ¶ 13, **Exhibit 20**.

50. The Town issued all affected owners notice of the intent to take, and asked the owners to undertake negotiations with the Town relative to the amount of compensation. **Exhibit 20**, ¶ 14.

51. Like others in the area, the plaintiffs received such a letter. Cordi Allen Depo, pp. 246-248. All owners but the plaintiffs responded to the Town's invitation to negotiate agreements. **Exhibit 20**, ¶ 15.

52. For almost two years, the Town negotiated with the property owners and reached agreement on all parcels except the plaintiffs. **Exhibit 20**.

53. The Order of Taking was recorded on February 15, 2002. **Exhibit 20**, ¶ 26 and attachment thereto. The plaintiffs and their neighboring Yacht Club were offered less than other property owners because both had existing piers within the tidelands area, which they were permitted to maintain after the taking. Id., ¶ 28; Cordi Allen Depo, pp. 272, 312.

54. The other private property owners did not have existing piers associated with their properties that they could maintain after the taking and thus their damages award were larger. **Exhibit 20**, ¶ 28.

55. The plaintiffs were offered $2,500 for the tidal flats on their property, but they didn't take it. Cordi Allen Depo, pp. 268-269. They are the only property that did not negotiate with the town and that did not accept compensation.

56. The plaintiffs have an eminent domain lawyer and a pending lawsuit regarding this taking. Id., p. 269. This complaint was filed in Barnstable

Superior Court in 2003, C.A. No. 03-00404.

Respectfully submitted,<br>
The Defendants,<br>
Town of Truro, et al,<br>
By their attorneys,<br>
<br>
/s/ Deborah I. Ecker<br>
Deborah I. Ecker, BBO# 554623<br>
Brody, Hardoon, Perkins & Kesten, LLP<br>
One Exeter Plaza<br>
Boston, MA 02116<br>
(617) 880-7100

DATED: May 26, 2006