UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA CORDI-ALLEN and JOHN ALLEN )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>JOSEPH R. CONLON, ARTHUR F. HULTIN, )<br>NORMAN H. POPE, KEITH S. ALTHAUS, and )<br>MARINNA MATRICARDI as they are members )<br>and are collectively the TRURO ZONING )<br>BOARD OF APPEALS, BROOKE NEWMAN, )<br>and the TOWN OF TRURO, MASSACHUSETTS )<br>)<br>Defendants. ) | MEMORANDUM IN SUPPORT OF<br>DEFENDANT BROOKE NEWMAN'S<br>MOTION FOR SUMMARY<br>JUDGMENT ON COUNT I OF THE<br>COMPLAINT[1] |

## Introduction

This meritless and malicious complaint was brought against defendant Brooke Newman for exercising her rights of lawful petition, in an attempt by plaintiffs to extort some personal advantage in order to obtain permits to develop their property, rather than to protect any property or legal interests recognized under the Zoning Act. The complaint should be dismissed for two reasons. First, plaintiffs do not have standing to bring this appeal, thus depriving the Court of subject matter jurisdiction. Second, even if plaintiffs could demonstrate that they have standing, which is not possible, they cannot meet their burden of proving that the decision of the Zoning Board of Appeals upholding the denial of plaintiffs enforcement request is legally untenable, in excess of the Board's authority, or arbitrary and capricious. As a direct result of this action and the underlying enforcement request, Ms. Newman has suffered damages, and has been prevented from full use and enjoyment of her property for nearly two years. The

---

[1] It is understood and acknowledged by all parties and expressly indicated in the papers served upon Ms. Newman that Count I is the only count of the complaint that concerns Ms. Newman.

complaint should be dismissed and the Court should exercise its considerable equitable powers and order plaintiffs to pay Ms. Newman's reasonable costs and attorneys fees in defending against this action.

## Statement of Undisputed Material Facts

On October 28, 1998, the Town of Truro issued a building permit to Brooke Newman for the alteration and reconstruction of a single-family residential dwelling on her property at 3 Yacht Club Road (the "Project"). Complaint at ¶ 28; Affidavit of Julie Pruitt Barry, filed herewith, at Exh. A. The Project included a small addition, a new second story and foundation, and the relocation of the building, such that it would be moved further away from plaintiffs' property and the Pamet river, and reoriented towards the Harbor. Barry Aff., supra; Affidavit of Patricia Pajaron, filed with the Truro defendants motion,[2] at ¶ 9.

\The Order of Conditions issued for the Project by the Conservation Commission ("the Commission") on May 18, 1998, contained the Commission's determinations in conditions 12(d) and (g) that "the proposed relocation of the building would place it as far as possible from the [Pamet] river," which "will likely provide greater protection to the following interests of the Act: flood control, and storm damage prevention." Barry Aff., Exh. B.

The Project commenced and was completed shortly thereafter in accordance with the building permit. *See* Ms. Newman's answers to plaintiffs' interrogatories, attached at Barry Aff., Exh. C, at Answer No. 10. The building has been used as a single-family residence since that time. Affidavit of Brooke Newman, filed herewith, at ¶ 3.

---

[2] This memorandum refers to and relies on certain portions of Ms.Pajaron's affidavit, but does not attach a copy in order to avoid unnecessary confusion and duplication.

By letter dated September 20, 1998, plaintiffs requested that the building commissioner not issue any building permits for the Newman property. Barry Aff., at Exh. D. The letter contains no allegations that plaintiffs would be aggrieved by the issuance of a building permit for the Project, nor any allegations that a building permit for the proposed modifications to Ms. Newman's dwelling would somehow harm plaintiffs' property or legal interests.

During heavy rains, high tides, intense storms, and winter storms plaintiff's property has been observed as being at least partially submerged. Newman Aff. at ¶ 7. Seaweed and driftwood are commonly seen around and behind plaintiffs' house, attesting that seawater routinely submerges plaintiffs' property. Id. Neither Ms. Newman's property or the Landis' property abutting the other side of the Newman property, both set considerably further from the water than plaintiffs' property, are affected in this manner by these events. Id.; Pajaron Aff. at ¶¶ 8-12, 14-15 and 18.

Plaintiffs propose to construct a new single family dwelling in addition to the existing one-bedroom structure on their property, resulting in at least four bedrooms (and perhaps as many as six) between the two dwellings, and including a garage and inground pool. Pajaron Aff. at ¶ 15; Newman Aff. at ¶ 11. On July 17, 2001, Ms. Newman filed an appeal in Suffolk Superior Court of the Title 5 variances granted to plaintiffs in order to develop the additional nine-room dwelling. Newman Aff. at ¶ 11. Ms. Newman herself had declined to purchase the property now owned by plaintiffs when it was placed for sale due to a one-bedroom restriction on the property. Id.

In May 2004, plaintiffs requested that the Commission take an enforcement action against Ms. Newman for purportedly failing to comply with the Order of Conditions issued for the Project. Complaint, ¶ 68. After notice and public hearing continued over several nights,

the Commission issued in November 2004 a Certificate of Compliance that the Project was in substantial compliance with the approved plans, which decision was not appealed by plaintiffs. Complaint at ¶ 70; Pajaron Aff. at 10.

On July 26, 2004, plaintiffs requested that the building commissioner revoke the building permit issued to Ms. Newman six years earlier, alleging that Ms. Newman was required to obtain a special permit or variance for the Project under Section VIII.B.1 of the Bylaw. Complaint at ¶ 79; Barry Aff., Exh. E-G. In support of their request, plaintiffs attached various correspondence from town counsel indicating that plaintiffs would require a special permit to develop their proposed residential structure in addition to the existing one-bedroom structure, thus, plaintiffs claimed Ms. Newman should also be required to obtain a special permit for the modifications made to her house. Complaint at ¶ 80; Barry Aff., Exh. E.

By letter dated October 19, 2004, building commissioner Thomas J. Wingard, Jr. denied plaintiffs' request to revoke the building permit issued to Ms. Newman six years earlier, concluding that the building permit was issued legally and lawfully by then-building commissioner Stephen Williams according to Section VIII-B2 of the Bylaw, which states:

> If the Building Commissioner determines and finds that the proposed repair, reconstruction, alteration, or structural change of a preexisting, nonconforming, single family or two-family residential structure will not be substantially more detrimental to its neighborhood than the existing nonconforming structure and will not increase the nature or extent of the nonconformity, then the Building Commissioner may approve and issue a building permit for the proposed repair, reconstruction, alteration, or structural change.

Complaint at ¶ 82; Barry Aff., Exh. H.

By letter dated October 26, 2004, plaintiffs appealed the building commissioner's decision to the Board, based on their previous allegations that Ms. Newman needed a special permit or variance for the Project, and that the building commissioner did not have authority under Section VIII(B)(2) to issue the building permit. Complaint at ¶ 83; Barry Aff., Exh. I.

There are no allegations in plaintiffs' appeal to the Board, other than an unsupported claim of aggrievement, that their property or legal interests would be harmed by the building commissioner's decision. Id.

Plaintiffs admitted at deposition that the structure as modified does not interfere with their view of Pamet Harbor, and that is not part of their concern, and Mr. Allen admitted that plaintiffs' property and residential structure have not been harmed by the modifications made to Ms. Newman's house. Barry Aff., Exh. K, p. 43-44, Exh. L, p. 16.

On October 27, 2004, plaintiffs filed a "Statement of Notice Under M. G. L. ch. 40A, Sec. 7," on Ms. Newman's deed at the Barnstable County Registry of Deeds. Barry Aff., Exh. M.

After notice and public hearing in December 2004 and January 10, 2005, the Board issued a written decision dated January 19, 2005, denying plaintiffs' appeal on grounds that the building commissioner acted within his authority in denying the request to revoke the building permit issued to Ms. Newman in 1998, and that the appeal was untimely. Complaint, ¶ 85; Barry Aff., Exh. N. The decision was filed with the town clerk that same day. Id.

After filing this action against Ms. Newman, Ms. Cordi-Allen expressly threatened in July 2005 to file more lawsuits against Ms. Newman if she did not drop her appeal of plaintiffs' Title 5 variances. Newman Aff. at ¶ 12. A few days after Ms. Cordi-Allen made this threat, she filed a notice of trespass against Ms. Newman with the Truro police department. Id.; Barry Aff., Exh. K, p. 71-73. About this same time, Ms. Cordi-Allen also filed complaints against Ms. Newman with the Commission over her well and water line and with the Harbormaster over Ms. Newman's mooring. Barry Aff., Exh. C, Answer No. 8.

As a direct result of plaintiffs' appeal, Ms. Newman has suffered in excess of $50,000 in damages, and has also been injured and suffered damaged as a direct result of the Statement

- 5 -

of Notice filed with her deed, preventing her from using her property as collateral, to obtain an equity line of credit, or to transfer her property.

Standard of Review

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. 'Dynamics Research Corp., 63 Fed.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Id. at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Standing is an issue of subject matter jurisdiction. See Ginther v. Commissioner of Insurance, 427 Mass. 319, 322 (1998). "The requirement [under G.L. c. 40A, § 17] that the challenger must be a 'person aggrieved' is jurisdictional." Denneny v. Zoning Board of Appeals of Seekonk, 59 Mass. App. Ct. 208, 211 (2003).

The Zoning Act provides that the Court is to find the relevant facts and to determine the legality of the Board's decision.[3] G.L. c. 40A, § 17. Judicial review in this circumstance is "circumscribed." Roberts v. Southwestern Bell Sys. Inc., 429 Mass. 478, 804 (1999). The decision of the Board *"cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary."* Id., (emphasis added), citing MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635 (1970).

---

[3] This assumes for the moment that plaintiffs are "aggrieved" by the Board's decision, which they cannot demonstrate and which is refuted herein

The interpretation of a bylaw is a question of law for the court. *See* Goldhurst v. Board of Appeals of North Andover, 27 Mass. App. Ct. 1183, 1184 (1989). As with the interpretation of statutes, the ordinary principles of construction should be employed to determine the intended meaning of a bylaw. *See* APT Asset Mgmt, Inc. v. Board of Appeals of Melrose, 50 Mass. App. Ct. 133, 138 92000); Green v. Board of Appeals of Norwood, 358 Mass. 253, 258 (1970). As the Board has "an intimate understanding of the immediate circumstances, of local conditions, and of the background and purposes of the entire [ordinance,]" the Court is to "give substantial deference to [the Board's] established interpretation of its zoning code." Berkshire Power Development, Inc. v. Zoning Bd. of Appeals of Agawam, 43 Mass. App. Ct. 828, 832 (1997).[4]

Once it is established that the Board's decision was within the range of its permissible choices, the burden is upon plaintiffs to establish that the decision was whimsical, arbitrary or capricious, or unlawful. *See* Tebo v. Board of Appeals of Shrewsbury, 22 Mass. App. Ct. 618, 626 (1986).

## ARGUMENT

I. **Plaintiffs Do Not Have Standing To Bring This Appeal, Thus, The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction**

Not once have plaintiffs ever alleged that the building permit issued to Ms. Newman or the Board's decision upholding the building commissioner's decision would adversely impact their property rights or legal interests. Plaintiffs' complaint contains not one single fact or allegation to support their bare assertion that they have been "aggrieved" by the Board's

---

[4] *See also* Manning v. Boston Redev. Auth., 400 Mass. 444, 453 (1987); Building Commissioner of Franklin v. Dispatch Communications of New England, Inc., 48 Mass. App. Ct. 709, 713 (2000); Advanced Development Concepts v. Blackstone, 33 Mass. App. Ct. 228, 231 (1992).

decision, which is a jurisdictional prerequisite for appealing to this Court under the Zoning Act. Plaintiff Barbara Cordi-Allen merely makes the unsupported allegation in ¶ 88 of the complaint that she is "aggrieved by the decision," while plaintiff John Allen does not even claim that much nor seek any relief under Count I.

While a person need not be aggrieved to make an enforcement request under Section 7 of the Zoning Act, "[t]o go beyond that stage, if the request for enforcement is rejected, a party must be aggrieved." Green v. Board of Appeals, 404 Mass. 571, 573 (1989). *See also* Chongris v. Board of Appeals of Andover, 17 Mass. App. Ct. 999, 1000 (1984). The standard for determining whether a person is "aggrieved" for purposes of an appeal under section 17 of the Zoning Act applies to appeals of denials of enforcement requests. Id. Section 17 of the Zoning Act states in pertinent part: "Any *person aggrieved* by a decision of the board of appeals or any special permit granting authority . . . may appeal to the superior court department in which the land is situated." G.L. c. 40A. § 17 (emphasis added). There is a well developed body of law arising under Chapter 40A setting out both the substantive standard for establishing standing (or when a plaintiff is a "person aggrieved") and establishing the procedural framework for addressing this issue. *See* Denneny, 59 Mass. App. Ct. at 211.

Under Chapter 40A, an "abutter" of a locus or other "parties in interest" entitled to notice of hearing are presumed to be aggrieved persons. G.L. c. 40A, §§ 11, 17. This presumption of aggrievement is rebuttable, however, and recedes when a defendant challenges the plaintiff's status as an aggrieved person and offers evidence warranting a finding "contrary to the presumed fact." Watros v. Greater Lynn Mental Health and Retardation Association, 421 Mass. 106, 111 (1995), citing Barvenik v. Board of Aldermen of Newton, 33 Mass. App.

Ct. 129, 131 and n. 7 (1992). *See also* Standerwick v. Zoning Board of Appeals of Andover, 64 Mass. App. Ct. 337, 341 (2005); Denneny, 59 Mass. App. Ct. at 212.

Once the presumption recedes, the preliminary jurisdictional question of standing is then to be decided on all the evidence, "with no benefit to the plaintiffs from the presumption." Marashlian v. Zoning Board of Appeals of Newburyport, 421 Mass. 719, 721 (1996). *See also* Denneny, supra. The plaintiff must at that point come forward with credible, admissible evidence to establish aggrievement, by showing "a plausible claim of a definite violation of a private right, a private property interest or a private legal interest." Bell v. Zoning Board of Appeals of Gloucester, 429 Mass. 551, 553-554 (1999), citing Harvard Square Defense Fund Inc. v. Planning Bd. of Cambridge, 27 Mass. App. Ct. 491, 493 (1989). Moreover, although the concept of standing is not to be construed narrowly, the Supreme Judicial Court has emphasized that this harm or infringement of a private legally protected right cannot be "speculative" or based on "speculative personal opinion," but must instead be "established by direct facts." Bell, supra; Marashlian, 421 Mass. at 722. "[A] plaintiff must be able to demonstrate, not merely speculate, that there has been some infringement of his legal rights," Denneny, 59 Mass. App. Ct. 208. Further, a plaintiff must demonstrate that "the injury flowing from the board's action is special and different from the injury the action will cause the community at large." Butler v. City of Waltham, 63 Mass. App. Ct. 435, 440 (2005). At a minimum, this means that general public concerns regarding aesthetics or neighborhood appearance, incompatible architectural styles, the diminution of neighborhood feeling, or the loss of open space are insufficient to establish aggrievement. *See* Harvard Square Defense Fund, 27 Mass. App. Ct. at 493.

While plaintiffs may have initially claimed presumptive standing, the undisputed facts set forth herein are more than sufficient to rebut that presumption. It is beyond dispute that plaintiffs have not alleged in this action or in the underlying appeal to the Board any harm to their legal or property interests within the scope of Zoning Act or Bylaw from the Board's decision upholding the building commissioner's decision not to revoke the building permit issued to Ms. Newman nearly eight years ago. Nor can plaintiffs set forth any evidence that they have suffered or will suffer any such harm as a result of the Board's decision. It is more than reasonable to infer from the fact that plaintiffs waited nearly six years after the issuance of the building permit and the completion of the modifications to Ms. Newman's home that they have not suffered any harm as a result.

The evidence, as set forth in the Statement of Undisputed Material Facts, shows that the modifications made to Ms. Newman's house under the building permit consisted of relocating the house approximately 15 feet further away from plaintiffs' property and further away from the Pamet river, a small addition, and a new second floor and crawl space foundation designed to meet building code requirements for construction in a flood zone. The undisputed facts show that the relocation of Ms. Newman's house further from the Pamet river protects the interests of the Wetlands Protection Act, as determined by the Commission and confirmed by the Certificate of Compliance - which was not appealed by plaintiffs. Plaintiffs have neither alleged nor set forth any evidence[5] to show that these modifications or the

---

[5] Plaintiffs may attempt to argue from the numerous allegations in the complaint concerning purported violations by Ms. Newman of various Commission approvals and regulations, that there are material facts in dispute. These claims were the subject of a separate enforcement request to the Commission in May 2004, and were not part of plaintiffs' appeal to the building commissioner or the Board and are not relevant to this action against Ms. Newman. Additionally, it is undisputed that the Commission issued a Certificate of Compliance to Ms. Newman on November 4, 2004, effectively denying plaintiffs' enforcement request and all the allegations therein. Plaintiffs did not appeal the Commission's decision, thereby barring any review by this court of those claims.

Board's decision have resulted or could result in any impact to their property or legal interests.

These facts alone are sufficient to warrant a finding "contrary to the presumed fact" sufficient to rebut plaintiffs' presumptive standing. Watros v. Greater Lynn Mental Health and Retardation Association, 421 Mass. 106, 111 (1995). In addition, however, plaintiffs admitted at deposition that Ms. Newman's house as modified does not interfere with their view of Pamet Harbor, which is not even part of their concern, and Mr. Allen goes so far as to admit that their property and their house have not been harmed by the modifications to Ms. Newman's house.

> A.  Plaintiffs Bear the Burden of Proving by Credible, Admissible Evidence, and Not Speculation, That They Have Standing to Bring This Appeal

Their presumptive standing having been rebutted by the facts, the burden is on plaintiffs to set forth credible evidence showing "a plausible claim of a definite violation of a private right, a private property interest or a private legal interest." Bell, 429 Mass. at 553-554. Indeed, plaintiffs would be hard pressed to put forth any credible assertion of aggrievement. To be considered "credible," evidence must have both a quantitative and qualitative component. See Butler, 63 Mass. App. Ct. 441-442. "Quantitatively, the evidence must provide specific factual support for each of the claims of particularized injury the plaintiff has made. Qualitatively, the evidence must be of a type on which a reasonable person could rely to conclude that the claimed injury likely will flow from the board's action. Conjecture, personal opinion, and hypothesis are therefore insufficient." Id.

Yet plaintiffs have set forth nothing but conjecture, personal opinion, and hypothesis as the basis for Ms. Cordi-Allen's claim of aggrievement. Any claim of injury is simply not credible in light of the physical location of plaintiffs' and Ms. Newman's respective

properties, and the fact that the modifications to Ms. Newman's house have had no impact upon plaintiffs' property. Plaintiffs' house lies much closer to Pamet Harbor than Ms. Newman's, and the Newman home does not in any way impair plaintiffs' view. The relocation of the Newman home in 1998 created more separation between the residences, and reoriented the structure to create more privacy.

Again, plaintiffs have failed to even allege, let alone set forth evidence showing, any such claim of injury. They have failed in the course of discovery, which is now closed, to set forth any facts to support any claim of aggrievement, including failing to produce any documents responsive to a request for documents concerning the effect upon their private property or other legally protected interests resulting from the Board's decision, nor does plaintiffs' deposition testimony set forth any such facts. Ms. Cordi-Allen's allegation – made for the first time during depositions - that the modifications to Ms. Newman's home would impact the value of her property are pure speculation and conjecture, and she admitted that she had not had an appraisal performed to support any such claim. This claim is also undercut by Ms. Cordi-Allen's own testimony that by harm to her property value, she was referring to the impact on property value from plaintiffs' inability to develop the proposed additional structure on their property. Similarly, Ms. Cordi-Allen's first-time allegation during the deposition that the modifications to Ms. Newman's house might cause erosion that would impact her property is also unsupported. Ms. Cordi-Allen admitted in deposition that she had no study performed to support this allegation. While she claims that her coastal expert and even Ms. Newman's expert found such erosion, this claim is false and plaintiffs will not be able to cite to any expert testimony to support it. The facts also show that the source of any erosion on plaintiffs' property is likely due to the seawater that submerges portions of the property during

heavy weather or high tide events, which do not similarly affect either Ms. Newman's property or the Landis' property to the other side.

Cumulatively, these eleventh hour, unsupported and speculative allegations do not provide the credible evidence necessary to establish standing. An allegation of aggrievement without support is insufficient to confer standing. *See* Rinaldi v. Board of Appeal of Boston, 50 Mass. App. Ct. 657, 659-60 (2001) (plaintiff's affidavit claiming that project would, among other things, interfere with his "quiet enjoyment" not enough to confer standing).

1.   *An Abstract Interest in Enforcement of the Zoning Bylaw is Insufficient to Confer Standing*

In their request to the building inspector to revoke Ms. Newman's building permit, plaintiffs state that if the building commissioner "conclude[s] that a special permit is not required for Ms. Newman, then plaintiffs should also need not obtain a permit if they substantially increase the square footage of their house and footprint." Given the absence of any allegations of harm, it is reasonable to infer that the sole purpose behind plaintiffs' appeal to the building inspector was to extort an undue personal advantage or leverage for their own proposed new residence rather than to protect their rights under the Bylaw. Such a motivation, however, does not constitute "aggrievement." In essence, this amounts to a claim by plaintiffs of some right to general enforcement of the Bylaw. There is, however, no such protected right. "An abstract interest in the enforcement of zoning laws is not sufficient." Denneny, 59 Mass. App. Ct. at 215; *see* Harvard Square Defense Fund Inc., 27 Mass. App. Ct. at 495-96 ("[a] general civic interest in the enforcement of zoning laws ... is not enough to confer standing"). In zoning litigation, the jurisdictional requirement of "person aggrieved" means someone who can assert "a plausible claim of private right, private

property interest, or private legal interest as opposed to a general public concern about a zoning question." Commonwealth v. Dowd, 37 Mass. App. Ct. 164, 166-167 (1994).

Plaintiffs cannot demonstrate that they are aggrieved by the Board's decision, and, thus, lack standing to bring this appeal. Count I should be dismissed for lack of subject matter jurisdiction.

## II. Plaintiffs' Complaint Should Be Dismissed Because The Board Correctly Upheld the Building Commissioner's Denial of Plaintiff's Enforcement Request.

Even if plaintiffs were able to demonstrate that they have standing to bring this appeal, their complaint must be dismissed on the merits because the facts show that the Board correctly upheld the building commissioner's decision denying plaintiffs' request to revoke Ms. Newman's building permit.

Where, as here, the building commissioner has refused to carry out a requested enforcement action, the burden of proof is on plaintiffs to demonstrate that the building permit was wrongfully issued. *See* Handbook of Massachusetts Land Use and Planning Law, Mark Bobrowski, § 7.05[E][4] (2005 Ed.). Plaintiffs set forth no evidence before the Board to demonstrate that the building commissioner wrongfully issued a building permit to Ms. Newman. Rather, they relied on an erroneous reading of the Bylaw to support their legal argument that the Project was governed under Section VIII(B)(1) of the Bylaw, and, therefore, Ms. Newman was required to obtain zoning relief from the Board before obtaining a building permit. As such, they argue the building commissioner was without jurisdiction to make a determination that the Project was not substantially more detrimental to the neighborhood and would not increase the nature or extent of the nonconformity.

Plaintiffs are incorrect as a matter of law. Section VIII(B)(1) does not apply to

residential structures. Thus, the Town of Truro has made a distinction in its Bylaw between the treatment of preexisting nonconforming residential structures and other preexisting nonconforming structures and uses. The applicable section is VIII(B)(2) of the Bylaw,[6] which expressly grants discretion to the building commissioner to determine whether a "proposed reconstruction, alteration, or structural change *of a preexisting, nonconforming, single family or two-family residential structure* will not be substantially more detrimental" to the neighborhood and will not increase the extent of the nonconformity. Bylaw at § VIII(B)(2) (emphasis added). The building commissioner exercised this legally granted discretion in issuing the building permit to Ms. Newman, and the Board correctly upheld his decision.

Plaintiffs also argue incorrectly that the Project did not constitute a "reconstruction, alteration, or structural change." The Bylaw broadly defines "alteration," as "[a]ny construction, reconstruction or related action resulting in a change in the structural parts, height, number of stories, exits, size, use or location of a building or other structure or any other related change." Bylaw at § II (§10.4 in current Bylaw). It is undisputed that the Project involved the relocation and re-orientation of Ms. Newman's dwelling, the addition of a new foundation, expansion of a room, and an addition of the second floor. These modifications clearly fall within the Bylaw's definition of an "alteration."

Plaintiffs also claim without any supporting evidence that the building commissioner

---

[6] Under the current Bylaw dated April 2005, this section has been relabeled as 30.7(B), however, there is no substantive change from the previous section, which was approved in December 1988. Barry Aff., Exh. F at p. 18, Exh. G at p. 17.

failed to make the required findings under Section VIII(B)(2).[7] The facts before the Board, including those presented by plaintiffs, show that the building commissioner issued a building permit to Ms. Newman based on an application submitted by the builder, Michael Maguire, which expressly indicates the location of the Property, including the sheet number and parcel number, the proposed work to be done consisting of a new foundation, the addition of a second story and relocation of the structure according to the site plan, and where the structure is located on the property. As such, the building commissioner was aware of the location, the type of building, i.e., residential, and the fact that the modifications were to be made to an existing structure. In issuing the building permit, the building commissioner certified that the permit was issued "in accordance with the Truro By-Laws," which Bylaws include Section VIII(B)(2). Id. Plaintiffs can point to no requirement in the Bylaw that the building commissioner make written findings in issuing the building permit that the Project would not be substantially more detrimental to the neighborhood than the existing house and that it would not increase the extent or nature of the nonconformity in issuing the building permit. And the Zoning Act does not specify the form or contents of building permits issued by a municipality.

Nor can plaintiffs point to any procedural error in the Board's decision as grounds for altering the Board's decision. The undisputed facts show that the Board's decision was issued in accordance with the Zoning Act and the Bylaw. The decision, dated January 19, 2005, was made 84 days after the filing of plaintiffs' appeal on October 27, 2004, well within the 100 days allotted for making a decision. Complaint at ¶¶ 83-86; Barry Aff., Exh. M. The Board deliberated and arrived at its decision after the close of public hearing. Id. The Board

---

[7] Any allegations by plaintiffs that Ms. Newman received a building permit due to her purported relationship with then-building commissioner Stephen Williams are utterly false and groundless. Newman Aff. at ¶ 8.

issued its decision in writing, indicating that the vote was unanimous, thereby indicating the vote of each member, and included a statement of grounds founded upon adequate findings. Id. See Brackett v. Board of Appeal of Boston, 311 Mass. 52, 54-55 (1942). And the decision was filed within 14 days in office of town clerk, and notice of decision provided to plaintiffs.

The Board's decision to uphold the building commissioner's decision was within its permissible range of choices under the Bylaw and Section 15 of the Zoning Act. Moreover, there is no possibility, especially given that the discovery period has closed, of plaintiffs coming forward with evidence to demonstrate any legal or factual error by the Board in upholding the building commissioner's issuance of the building permit to Ms. Newman. The Board's decision should be upheld.

### III. Plaintiffs' Complaint Is Malicious, and Brought in Retaliation for Ms. Newman's Lawful Petitioning Activities, in an Attempt to Extort Some Undue Personal Advantage Rather Than to Protect Their Interests

There is sufficient evidence in the record to demonstrate that plaintiffs brought this action against Ms. Newman to extort some personal advantage rather than protect their zoning rights. While plaintiffs were aware of the building permit in 1998 and even requested that the building commissioner not issue the permit, they waited six years after the building permit was issued and the modifications made to Ms. Newman's home before requesting that the building permit be revoked. It was not until after Ms. Newman had filed an appeal of plaintiff's title 5 variances that they filed their enforcement requests with the Commission and building commissioner. Given plaintiffs' failure to demonstrate that they are aggrieved, it is clear that the sole purpose for bringing this action is to obtain some type of leverage for their

own proposed construction project.

The facts show that Ms. Cordi-Allen has maliciously pursued this litigation against Ms. Newman and has threatened additional litigation against Ms. Newman if she does not drop her appeal of plaintiffs' Title 5 variances. Newman Aff. at ¶ 12. Additionally, Ms. Cordi-Allen filed a completely baseless trespassing notice with the Truro police a few days after threatening Ms. Newman, and has told people in the Town that she would bury Ms. Newman in legal fees or anyone else who got in the way of her development of her property. Id. at ¶ 13. In addition to the trespassing claim filed last July, Ms. Cordi-Allen also filed around the same time complaints against Ms. Newman with the Commission and Harbormaster.

Section 17 of the Zoning Act provides for an award of costs for malicious or bad faith appeals. In light of Ms. Cordi-Allen's egregious actions this Court should also consider the intent of the legislature in passing the state's anti-SLAPP Act, G.L. c. 231 s. 59H, which mandates an award of attorneys fees and costs to persons who are forced to defend themselves against litigation brought solely in retaliation for lawful petitioning activities. While the Court is not bound by the procedural requirements of the anti-SLAPP Act, it can nevertheless consider the substantive requirements, and should exercise its considerable equitable powers and award Ms. Newman her reasonable costs and attorneys fees arising from her defense against this malicious and meritless action.

## Conclusion

Wherefore, Ms. Newman respectfully request that the Court allow this motion and:

    a.    dismiss Count I of plaintiffs' complaint for lack of subject matter jurisdiction; or alternatively;

b. find that the Board correctly upheld the building commissioner's decision denying plaintiffs' request to revoke Ms. Newman's building permit, and, accordingly, dismiss plaintiffs' Count I of plaintiffs' complaint;

c. find that plaintiffs' complaint was filed with malice to extort undue advantage and to retaliate against Ms. Newman's lawful petitioning activities and award Ms. Newman her reasonable costs and attorneys fees for defending against this action in accordance with G.L. c. 231, § 59H;

d. order plaintiffs to immediately and without delay remove the Notice from Ms. Newman's title in the Barnstable Registry of Deeds; and

e. order such other and further relief as justice requires.

BROOKE NEWMAN,

By her attorneys,

/s/ Julie Pruitt Barry
Julie Pruitt Barry (BBO #563018)
Nutter, McClennen & Fish, LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210-2604
617-439-2000

Dated: May 26, 2006

153338.1