UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10370PBS

```
                                    )
BARBARA CORDI-ALLEN, et al.         )
                                    )
        Plaintiffs                  )
                                    )
v.                                  )
                                    )
Joseph Conlon, et al.               )
                                    )
        Defendants                  )
_____)
```

**PLAINTIFFS" MOTION FOR LEAVE TO EXCEED
TWENTY PAGE LIMIT**

1.    Plaintiffs hereby move this court to allow them to file a memorandum in excess of

twenty pages pursuant to Local Rule 7.1(b)(4)


2.    As the basis for this motion, they state that this memorandum responds to two

motions for summary judgment including one whose own memorandum exceeds twenty

pages.


3.    A single response results in a single document and the memorandum is 25

pages long which is less than the 40 pages that Plaintiffs would be allowed if they filed

two memorandums.

Wherefore the Plaintiffs request leave of the court to file a memorandum of law in

excess of 20 pages.

Respectfully Submitted,

Paul Revere, III
(BBO #636200)
Law Offices of Paul Revere, III
297 North Street, Suite 336
Hyannis, Massachusetts 02601
(508) 778-7126

Dated: June 16, 2006.

I certify that a copy of this brief was served on all counsel record on June 16, 2006.

Paul Revere, III

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10370PBS

|  |  |
|---|---|
| BARBARA CORDI-ALLEN, et al. | ) |
| Plaintiffs | ) |
| v. | ) |
| Joseph Conlon, et al. | ) |
| Defendants | ) |

## MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This action involves multiple issues ranging from an appeal by Plaintiff Barbara Cordi-Allen of a decision of the Town of Truro Zoning Board of Appeals to a claim by Plaintiffs John Allen and Barbara Cordi-Allen (collectively the "Allens") alleging that the Town of Truro ("Truro") acting through its various boards violated the Allens due process and equal protection rights in a concerted effort by the Boards, Commissions, and other agencies of the Town of prevent the Allens from developing in their waterfront property. The Defendants, the individual members of the Truro Zoning Board Appeals and the Town of Truro (collectively the "Truro Defendants"), have moved for summary judgment on all counts of the Complaint and Brooke Newman has moved for summary judgment on Count I, the only count for which she is a Defendant. The Defendants have failed to meet their burden of proof and their motion should be denied.

## FACTS

The following sets forth an accurate history of the facts correcting the numerous inaccuracies in the Truro Defendants and Brooke Newman's brief.

### I.    Geographic Location and Acquisition By Allens

The Allens' property is part of a three lot subdivision within the Pamet River/Mill Creek embayment approved by the Truro Planning Board in 1972. *See* Truro Defendants' Exhibit 2, at pp. 3-5 (Pajoron Affidavit) and Exhibit 8 (subdivision plan).  On the plan the Pamet Harbor Yacht Club's property, the Allens' property, Brooke Newman's property, Sarah Landis' property, and the Town's parking lot are shown from south to north (*i.e.*, top to bottom). *Id. See also* Affidavit of Paul Revere, III ("Revere Aff.") at Ex. One (aerial photograph of area used as Exhibit 5 to deposition of Barbara Cordi-Allen).

In 1992, the property now owned by Allens was owned by Financial Enterprises, Inc. ("FEC") who submitted a notice of intent under the Wetlands Protection Act ("WPA") and a request under Title 5 of the State Environmental Code ("Title 5") to construct a non-nitrogen removing septic system for the property.  The plan submitted by Financial showed a coastal bank and land subject to coastal storm flowage wetland resource areas on the property. *See* Felco Engineering Plan, dated July 7, 1992 (copy attached as Exhibit Two to Revere Aff.).   The request under Title 5 was approved by the Truro selectman in a decision which states:

> 1.    Regardless of the capabilities of the Title V system, the dwelling will be restricted to a one (1) bedroom residence.

2.    That a Certificate of Occupancy will not be issued until such time as this office is in receipt of a copy of the recorded easement for the water supply

Truro Defendants' Exhibit 10.

By its terms, the 1992 selectman's decision did not permanently restrict the property to a one bedroom residence, but only the use of the then existing dwelling and only for so long as it used the septic system approved in the variance. The approval contains no statement that such limitation shall be in perpetuity or, like the easement for water supply, require recordation in the Barnstable County Registry of Deeds.

The notice of intent, however, was denied on February 9, 1993, by the Truro Conservation Commission with the statement:

> The Commission finds the site of the proposed septic system to be in flood zone A4, and mainly in 100 foot buffer zone of the shore of Pamet harbor (sic), a tidal salt water body. **The site is altered coastal dune.**

Revere Aff., at Exhibit Three.

In May, 1993, the Southeast Regional Office of the Massachusetts Department of Environmental Protection ("DEP"), superseded that denial and approved the site plan including the delineations of wetlands stating:

> The project proposes construction of a septic system and well supply line for an existing cottage. The nature and location of the present septic system is unknown. Review of the United States Geological Survey geologic map for the Wellfleet Quadrangle (1968) indicates that the sediments are predominately sand and gravel valley deposits. Based upon this information, the Flood Insurance Rate Map for the Town of Truro, **and observations made at the site, the Department has determined that the resource area in which the site is located is Land Subject to Coastal Storm Flowage (Zone A4, el. 12).** The Department

has determined that the site is significant to the statutory interests of storm damage prevention and flood control.

Review of the proposed project indicates that the proposed septic system complies with the requirements of 310 CMR 15.00, Title 5, the State Environmental Code.    The Department's Division of Water Pollution Control has approved the variances granted by the Board of Health concerning the property line setback and no reserve.    Therefore, **the system enjoys the Presumption Concerning Title 5 of the State Environmental Code at 310 CMR 10.03 (3) of the Wetlands Protection Act Regulations and is presumed to protect the interests identified in the Act.** . . .

Revere Affidavit at Ex. Four.

Thus, the DEP rejected the notion that the Allens' property contained a "coastal dune" and specifically affirmed the holding that the Allens' property contained "land subject to coastal storm flowage."    No appeal was taken of this decision by Truro or its Conservation Commission.

## II.    Allens Purchase And Septic Permitting

In March, 1996, the Allens purchased the Property from FEC and later filed a notice of intent under the WPA and a request for a variance from Title 5  to construct a house and septic system.  The Allens were not aware of the 1992 decision on the Title 5 permit filed by FEC. Truro Defendants' Exhibit 4 (Deposition of Barbara Cordi-Allen), p. 228 ("Q. . . . Were you aware that there was a one bedroom restriction placed on the house prior to your purchase of the house? A. "No. . . .")  In reviewing the application, the Truro Board of Health requested the opinion of Town Counsel who by letter dated September 27, 1996, informed the Board that it was free to consider the application

4

without regard to the 1992 letter which the Town has argued restricts the Allens' property. Revere Aff. at Exhibit Five, pp. 5-7.[1]

In April, 1997, the Allens revised their plan and again requested variances from the Truro Board of Health for a new three bedroom septic system on the property. The plan submitted by the Allens contained the same wetland resource areas (coastal bank and land subject to coastal storm flowage) in the same locations as the DEP approved in 1993. The proposed system replaced the current septic system with a system that incorporated the "FAST" technology that reduced nitrogen concentration in the effluent. Furthermore, the leaching field for the proposed system was located at the far western edge of the property more than 100 feet from the edge of the coastal bank. The location exceeded the state mandated 50 foot setback from the coastal bank by more than 50 feet, obviated the need for any variances from Truro's requirement to maintain 100 feet of separation between the leaching field and the shores of Pamet Harbor. See Revere Aff. at Exhibit Six.

Truro belatedly attempted to deny the requested variances in 1997, and the Allens appealed to Superior Court and, on April 15, 1999, the Superior Court ordered the variances granted. Revere Aff. at Ex. Seven. On January 18, 2000, DEP issued a variance from 310 C.M.R. 15.248: Reserve Area to the Allens (the "DEP Variance"). Revere Aff. At Ex. Eight. The DEP Variance approved the use of nitrogen removing

---

[1]Though not mentioned in the letter, the enforceability of the restriction is probably barred as an "indefinite reference" under M.G.L. ch. 184, Sec. 25, which provides that property is not subject to restrictions which are not recorded in the Registry of Deeds.

FAST system and further expressly noted that a system without a variance could be constructed, but that it benefitted the environment to grant the variance as it ensured a maximum separation from the Pamet Harbor. Truro did not appeal the DEP Variance and, thus, the DEP Variance became final. M.G.L. ch. 30A, Sec. 14.

As discussed in detail below, DEP issued a superseding order of conditions under the WPA authorizing the Allens house and septic system in June, 2000. In February, 2001, Truro's Health Agent informed the Allens' attorney that the order of conditions and the DEP Variance referenced different plans and that the DEP Variance needed to be modified for the Town to issue a septic system construction permit. Revere Aff. at Ex. Nine. The Allens' attorney then requested that the DEP Variance be modified to reflect the new plan. *Id.* A review of the plan reveals that there is a single change to the septic system in that piping from a portion of the building to the septic tank has been moved a few feet to the east. *Compare* Revere Aff. Ex. Ten *with* Ex. Eleven.

On April 30, 2001, the Southeast Regional Office of DEP approved the request stating:

> On January 18, 2000, the Southeast Regional Office of the Department of Environmental Protection approved variances for a subsurface sewage disposal system at the above referenced location pursuant to Title 5 of the State Environmental Code, 310 CMR 15.412. Subsequently, modifications were made to the approved plans cited in the approval letter and these revised plans were submitted to the Department for review and approval.
>
> The Department finds that the proposed revisions are consistent with the technical and regulatory issues pursuant to Title 5 that comprised the review and approval of the original application.

Revere Aff. At Ex. Twelve (hereinafter the "Amended DEP Variance").

*6*

The Town of Truro and Brooke Newman then filed Superior Court actions (Barnstable County No. 01-347, Suffolk County No. 01-2419F) challenging the Amended DEP Variance. In early, 2004, the Town for the second time attempted to have its Superior Court action remanded to DEP arguing that the Allens misled regulatory authorities in not showing a "coastal dune" on the Property when in fact the Allens showed wetland resources that had been approved by DEP in both 1993 (see above) and 2000 (see below). This motion was summarily denied by the Barnstable Superior Court. Revere Aff. At Exhibit Thirteen. Following that denial, Truro submitted a motion for judgment on the pleadings arguing that there were numerous deficiencies in the Amended DEP Variance. Revere Aff. at Ex. 14. However, those arguments are simply irrelevant as the time to appeal those issues passed 30 days after the issuance of the DEP Variance in 2000, (M.G.L. ch. 30A, Sec. 14), and the current proceeding is simply limited to the changes (movement of pipes) in the Amended DEP Variance issued in 2001.

## II.    Chapter 91 Permitting and Truro's Land Grab

A prior owner of the property had obtained a M.G.L. ch. 91 license from the DEP to maintain a fixed pier and float system that extended approximately 122 feet from mean high water into the Pamet River. Revere Aff. at Ex. Sixteen.   FEC obtained a determination from DEP that the license remained valid for the fixed pier, but not for the float system. Revere Aff. at Ex. Seventeen.  The Allens also applied to the DEP to relicense and modify the float portion of the system.  Even though the relicensing was in the same location as the prior float system, letters were sent by the Town administrator and the Harbormaster of Pamet Harbor requesting that the M.G.L. ch. 91 license be denied and/or that a public hearing be held. Revere Aff. at Ex. Seventeen.  Within a

7

month, the harbormaster "blew the whistle" on Chairman of the Pamet Harbor Commission who was also a member of the Pamet Harbor Yacht Club alleging that : (I) the Chairman pressured the Town Administrator to write the letter after the harbormaster originally refused to do so; and (ii) the harbormaster signed a similar letter in "a moment of weakness" when he believed that he would not obtain a raise if he refused to write a letter in opposition. *Id.* When these allegations were revealed, the Town of Truro selectman refused to accept the resignations of Pamet Harbor Commission members and went so far as to criticize the harbormaster for his actions. *Id.*

Later, DEP and the Army Corps of Engineers informed the Allens that they would issue a M.G.L. ch. 91 license for the float system, Truro Defendants' Ex. 4, at pp. 261-262, and Revere Aff. at Ex. Eighteen, but the DEP then denied a license for the floats in 2000, which remains subject to an adjudicatory hearing.

On February 15, 2002, the Town of Truro took the tidelands in front of the Plaintiffs property by eminent domain. The Allens were offered a payment of $2,500 for the land which was the lowest of any property owners and approximately ten percent of the amounts paid to their residential neighbors including Ms. Newman. The purported reason for the lesser payment was that the Allens retained an easement in the location of an existing dilapidated pier which only reaches the water during less than one quarter of the tidal cycle. *See* Truro Defendants' Ex. 20 and Revere Aff. at Ex. 1.

In July, 2004, the Allens requested authority to install floats off of the "viewing platform." Town counsel nearly immediately responded that such licenses would not be issued as the Town owned the tidelands in which they would be located. Complaint and Answer at paras. 76-78. However, the Town of Truro has licensed for at least two years floats of the Pamet Harbor Yacht Club which extend beyond their easement. *Id.*

## IV.    Wetlands Permitting And Newman Property

During May, 1998, through February 1999, the Truro Conservation Commission issued an order of conditions and modifications allowing Ms. Newman to relocate and expand her home at 3 Yacht Club Road which showed a limited amount of "fill" being place on the property and raising the maximum elevation of the land near the home to elevation 12.0 NGVD and no placement of rocks, construction of a fence, or planting or trees. Truro Defendants' Ex. 2 at Ex. E. The plans showed the Allens property (immediately to the east between the Newman property and Pamet Harbor) and provided that the whole area (Allen and Newman) was coastal flood plain with a coastal bank near the water. *Id.* No "coastal dune" was shown anywhere on the plan. The plan stated that the building would have a flood proof foundation, *id.,* and a foundation with solid walls (not a pier foundation) was ultimately constructed on the property.

As discussed above, the Allens had filed a notice of intent with the Truro Conservation Commission in 1996, to obtain an order of conditions to construct a septic system and a larger house on their property. The plan submitted with the notice of intent showed the same coastal bank and coastal flood plain as the Newman plan. *See* Exhibit Six (copy of plan).    Recognizing that the Conservation Commission had failed to act on their

9

plan, but had acted on Newman's, the Allens requested that the DEP issue Superseding Orders of Conditions for the Allens proposed house and septic system which request was accepted in January, 1999.

The plan submitted by the Allens to DEP contained the same wetland resource areas (coastal bank and land subject to coastal storm flowage) in the same locations as were found by DEP in 1993 when it rejected a contention by the Truro Conservation Commission that the Property contained a "coastal dune." These were the same delineations submitted by Ms. Newman.

On June 8, 2000, by letter from Elizabeth Kouloheras, the Southeast Regional Office of DEP issued a superseding order of conditions authorizing the Allens' house and septic system. Revere Aff. At Ex. 20. The DEP concluded that the Property did not contain a "coastal dune" and authorized the construction of septic system on it. In June, 2000, the Town of Truro requested an adjudicatory hearing on the superseding order of conditions alleging that the Allens' property contains a "coastal dune." Complaint and Answer at para. 47. In November, 2000, a prehearing conference was scheduled for the appeals of the superseding orders of conditions, and Ms. Newman filed a motion to intervene in the proceeding which was ultimately granted and alleged that there existed a "coastal dune" on both the Property and her adjacent property. Revere Aff. At Ex. 21, p. 2 (allegation that project will cause "degradation of the primary coastal dune located on Ms. Newman's property and the Applicant's property"). The motion to intervene was somewhat perplexing as Ms. Newman never showed a coastal dune on any of her

filings with the Truro Conservation nor does the development of her property comply with the performance standards for "coastal dunes."

In May, 2004, the Allens requested that the Conservation Commission initiate enforcement against Brooke Newman for failure to comply with the terms of her order of conditions and failing to comply with "coastal dune" performance standards which the Commission and Ms. Newman wish to have applied to the adjacent Allen Property. Revere Aff. At Ex. 22.  The information submitted to the Commission during 2004 demonstrated that Ms. Newman: (I) placed more than two feet of additional fill on her property which was not shown in any plan; (ii) planted trees and constructed a fence which were not shown on her plans and were inconsistent with the representation that only "native grasses" would be planted in her notices of intent; (iii) placed large boulders onto the property; and (iv) took other actions which did not comply with coastal dune performance standards even though Ms. Newman has alleged that her property and Ms. Cordi-Allens contain a "coastal dune."

Even though these actions were wholly inconsistent with the plan approved for Ms. Newman's property, the Commission voted to issue a certificate of compliance that the work performed by Ms. Newman was in "substantial compliance" with her approved plans. Truro Defendants Ex. 2, at para. 10.

11

## VI.    Zoning Compliance

On or about October 28, 1998, the Building Department of the Town of Truro issued a building permit for construction on Brooke Newman's property at 3 Yacht Club Road without requiring Ms. Newman to obtain a special permit or a variance. Complaint and Answer at para. 29. In April and May of 2002, Town Counsel in the Town's continuing assault on the Allens wrote to the Allens attorney and stated that the Allens required a variance from the zoning bylaw to expand their home or, at a minimum, a special permit, even though their neighbor, Brooke Newman, had not been required to do so for her expansions. Revere Aff. At Ex. 23.

By letter dated July 26, 2004, Barbara Cordi-Allen requested that the Building Commissioner revoke the building permit issued to Brooke Newman as she had not obtained a special permit or variance. Truro Defendants' Ex. 5.  The request cited letters to the Allens' counsel from town counsel stating that the Allens required a variance or special permit and that the Town had required Sarah Landis to apply for a special permit.  The Building Commissioner failed to respond within the statutorily required 14 day period. *Id.*

Finally, after numerous telephone calls to town counsel, the Building Commissioner issued a letter on October 19, 2004, denying the request and essentially stating that his predecessor must have found that a special permit or variance was not required. *Id.*  On October 27, 2004, Barbara Cordi-Allen filed an appeal of that decision with the Truro Zoning Board of Appeals and filed a notice with the Barnstable County Registry of Deeds on the following day. *Id.*

12

The Truro Zoning Board of Appeals held a public hearing in December, 2004, and again on January 10, 2005. Truro Defendants Ex. 6. On January 19, 2005, a decision was filed with the Truro Town Clerk denying Ms. Cordi-Allen's appeal. *Id.*

## ARGUMENT

### I.   Chapter 40A Claim Is Timely - Truro Defendants

The Truro Defendants argue that judgment should issue in their favor on the M.G.L. ch. 40A portion of this proceeding because this proceeding was commenced on February 8, 2005, and the building permit for Defendant Brooke Newman was issued on October 28, 1998, more than six years prior to the commencement of this proceeding. However, this proceeding is timely as the violation did not "commence" until the actual construction of the building pursuant to the permit in February, 2005, and, regardless, this proceeding commenced when the Plaintiffs requested enforcement in the summer of 2004.

More particularly, M.G.L. ch. 40A, Sec. 7 (emphasis added) provides:

> if real property has been improved and used in accordance with the terms of **the original building permit** issued by a person duly authorized to issue such permits, no action, criminal or civil, the effect or purpose of which is to compel the abandonment, limitation or modification of the use allowed by said permit or the removal, alteration or relocation of any structure erected in reliance upon said permit by reason of any alleged violation of the provisions of this chapter, or of any ordinance or by-law adopted thereunder, shall be maintained, unless such action, suit or proceeding is commenced and notice thereof recorded in the registry of deeds for each county or district in which the land lies **within six years next after the commencement of the alleged violation of law**

According to the Truro Defendants, Defendant Newman was issued a building permit on October 28, 1998, and no further inquiry is necessary as this court proceeding did not

commence until six years after that date.  However, the six year period begins not on
the date of issuance of the building permit, but rather from the "commencement" of the
alleged violation.[2]   Here, the violation commenced when the Defendant Newman
actually constructed the improvements pursuant to the permit which according to the
Truro Defendants did not begin until March, 1999. *See* Rule 56.1 Statement of
Undisputed Facts at p. 2, para. 5 (construction began in 1999, citing Pajaron Affidavit at
para. 8 (site plan approved March, 1999).

Finally, this proceeding "commenced" in the summer of 2004, when the Plaintiffs
requested that the building commissioner revoke the building permit and further when
the Plaintiffs appealed that decision to the Truro Zoning Board of Appeals on October
27, 2005, both before six years had elapsed from the issuance of the building permit.

## II.     Plaintiffs Have Standing To Maintain This Action -
    Truro Defendants and Newman

There is no dispute that M.G.L. ch. 40A, Sec. 17, requires that the Plaintiffs must be
"aggrieved" to maintain an appeal of the Truro Zoning Board of Appeals' decision and
that the Plaintiffs are entitled to a presumption of standing. M.G.L. ch. 40A, Sec. 11.  To
challenge that presumption, the Truro Defendants and Brooke Newman are required to
submit evidence to overcome the presumption, here they have simply stated that they

---

[2]In fact, the Truro Defendants' position contravenes the history of M.G.L. ch. 40A, Sec. 7, which
prior to 1975 provided that such action must be commenced within "six years next after the
issuance of such permit" (*see* 1970 Mass. Acts 678, Sec. 1) and was amended in 1975 to have
such action must be commenced within "six years next after the commencement of the alleged
violation of law." *See* 1975 Mass. Acts 808, Sec. 7.

contest the Plaintiffs standing.  This is not sufficient to overcome the presumption of

standing.  More particularly, the Appeals Court of Massachusetts has explained:

> There was evidence that some of the plaintiffs were abutters to abutters
> and as "parties in interest" had received notice of the public hearing.
> M.G.L. ch. 40A, Sec. 11.  There is a rebuttable presumption that such
> persons are aggrieved persons under M.G.L. ch. 40A, Sec. 6. *Marotta v.*
> *Bd. of Appeals of Revere,* 336 Mass. 199, 204 (1957). *Paulding v. Bruins,*
> *supra* at 709.  The record does not demonstrate that the Danielses
> presented evidence to overcome the presumption.  In addition such
> abutters, owners of property located in the same zoning district – a single
> family – one acre district – had a legitimate interest in preserving the
> integrity of the district . . . .

*Murray v. Bd. of Appeals*, 22 Mass. App. Ct. 473, 476 (1986), *see also Watros v.*

*Greater Lynn Mental Health and Retardation Ass., Inc.*, 421 Mass. 106, 111 (1995)

("The presumption recedes when a defendant challenges a plaintiff's status as an

aggrieved person and offers evidence supporting his or her challenge.").


Here, the Truro Defendants have presented no evidence to rebut the presumption of

standing.  Furthermore, the Plaintiffs have a legitimate right to protect the integrity of the

zoning district from increases to house sizes without special permit or variance review

by the Board of Appeals.


Notwithstanding, there exists evidence before the court that demonstrates evidence of

injury within the areas of interest of the Truro Zoning Bylaw and establishes the

standing of the Plaintiffs.  In her deposition, Plaintiff Cordi-Allen states that the location

of a building and septic within the flood zone with a solid foundation will have negative

impacts her building.  *See* Truro Defendants Exhibit 4, at pp. 23-25.  This is the same

exact impact that Defendant Newman has stated that construction on the Plaintiffs'

property will have upon her property. *See* Revere Aff. Ex. 21 (Defendant Newman's Motion to Intervene in DEP proceeding citing septic, construction, and floodplain impacts as the basis for her injuries). Furthermore, the protection of the environment and natural resources are within the purposes of the Truro Zoning Bylaw (Defendant Newman Exhibit F, p. 1) and such bylaw contains specific floodplain regulations. *Id.* At p. 16.

## III.    Defendants Are Not Entitled To Judgment On The Merits Under 40A - Truro Defendants and Brooke Newman

This matter involves a request that the Truro Zoning Board of Appeals require the Defendant Brooke Newman to revoke a building permit and require her to apply for a "special permit" or variance. Here, the Defendants do not disagree that the Newman house is a non-conforming structure as a conforming structure (*i.e.,* a building that meets applicable setbacks) on a nonconforming lot (*i.e.*, one such as Newman's that is less than applicable lot area requirements) is treated as a "nonconforming structure" for purposes of zoning. *See Dial Away Co., Inc. V. Zoning Board of Appeals of Auburn,* 41 Mass. App. Ct. 165 (1996). They argue, however, that the Building Commissioner had authority to issue the building permit pursuant to the former Section VIII(B)(2) (now Section 30.7(B)) of the Town's Zoning Bylaw which provides:

> If the Building Commissioner **determines and finds** that the proposed repair, reconstruction, alteration, or structural change of a preexisting, nonconforming, single family or two family residential structure will not be substantially more detrimental to its neighborhood than the existing structure and **will not increase the nature or extent of the nonconformity**, then the Building Commissioner may approve an issue a building permit for the proposed repair, reconstruction, alteration or structural change.

The Truro Zoning Bylaw defines "alteration" as: "Any construction, reconstruction or related action resulting in a change of structural parts, height, number of stories, exits, size, use or location of a building or structure or any other related change." Newman Exhibit F, at p. 1. As shown in the Truro Defendants Ex. 2, Ex. F., the Newman house was relocated and increased in size as part of the building permit. The Newman building permit constituted a "alteration" as it involved "a change of . . . location of a building or structure." Thus, the Building Commissioner could only issue a building permit if he made two findings: (I) the alteration would not be substantially more detrimental to the neighborhood than the existing building; and (ii) the alteration did not increase the nature or extent of the non-conformity.

The Truro Defendants have submitted no evidence to support there assertion that the alteration was not more detrimental than the existing building. Additionally, there is no evidence that the alteration did not increase the nature or extent of the non-conformity. With respect to the latter point, in *Bransford v. Board of Appeals of Edgartown*, 12 Land Ct. Rep. 211 (May 27, 2004), the Land Court held that a reconstruction which added a second story and two hundred square feet of additional footprint required a special permit even because it increased the nonconforming nature of residential structure on an undersized lot even though the house and the addition did not encroach into any applicable setbacks. The Land Court further upheld the denial of a special permit for the reconstruction on the basis that the reconstruction was more detrimental than the existing house. The Land Court decision was upheld by an equally divided Supreme Judicial Court of Massachusetts in *Bransford v. Bd. of Appeals of Edgartown*, 444 Mass.

853 (2005). Thus, the Truro Defendants have neither facts nor law to support their position that summary judgment should enter on this issue.[3]

## IV.    Section 1983 Statute Of Limitations Defense Has Been Waived - Truro Defendants

Rule 8(c) of the Federal Rules of Civil Procedure requires that the statute of limitations be raised as an affirmative defense and such defenses are forfeited. A review of the Truro Defendants' answer to the complaint shows that the statute of limitations was not raised as an affirmative defense. Therefore, it is inappropriate to consider this defense in this summary judgment motion. Notwithstanding, the complaint alleges numerous acts within the last three years by the Truro Defendants and, therefore, the statute of limitations defense will not result in judgment for the Truro Defendants.

## V.    Plaintiffs Have Established A Section 1983 Claim

The two essential elements of a cause of action under 42 U.S.C. 1983 are that: (I) the "person" committed conduct under the color of state law; and (ii) the conduct resulted in a denial of rights secured by the United States Constitution. *Paratt v. Taylor*, 451 U.S. 527 (1981). The Truro Defendants first move for summary judgment that the Allens cannot establish a violation of rights secured by the United States Constitution. The motion should be denied because the Plaintiffs have established sufficient evidence to

---

[3]The Plaintiffs also direct the court's attention to the Truro Defendants Exhibit Five which includes certain letters to the Plaintiffs' former and deceased counsel stating that the Plaintiffs could not move and expand their building without a special permit from the Zoning Board of Appeals. *See* Letter from Sarah Turano-Flores to William Thomas, dated April 5, 2002, at page 3.

create a dispute of material fact for their equal protection claim and because the Truro

Defendants have failed to address the due process and temporary takings claims.

In *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), the United States Supreme

Court addressed the application of the Equal Protection Clause of the Fourteenth

Amendment of the United States Constitution to local permitting decisions and applied a

new less stringent standard to such claims. Prior to *Olech*, an equal protection violation

required a showing that (1) the person compared with others similarly situated, was

selectively treated; and (2) that such selective treatment was based upon impermissible

considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person. *Yerardi's Moody*

*St. Restaurant & Lodge, Inc. v. Bd. of Selectmen*, 878 F.2d 16, 21 (1st Cir. 1989). In

*Olech*, however, the United States Supreme Court addressed whether an equal

protection claim could be maintained against a municipality for requesting a 33 foot wide

water easement when it allegedly had only requested a 15 foot wide easement from

others under what has become known as a "class of one claim." The court stated:

> Our cases have recognized successful equal protection claims brought by
> a "class of one" where the plaintiff alleges that she has been intentionally
> treated differently from others similarly situated and that their is no rational
> basis for the difference in treatment. In so doing, we have explained that
> "the purpose of the equal protection clause of the Fourteenth Amendment
> is to secure every person within the State's jurisdiction against intentional
> and arbitrary discrimination, whether occasioned by express terms of a
> statute or by its improper execution through duly constituted agents.
>
> That reasoning is applicable to this case. Olech's complaint can be fairly
> construed as alleging that the Village intentionally demanded a 33-foot
> easement as a condition of connecting her property to the municipal water
> supply where the Village required only a fifteen foot easement from other
> similarly situated property owners. The complaint also alleges that the
> Village's demand was "irrational and wholly arbitrary" and that the Village

ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. We therefore affirm the judgment of the Court of Appeals, but do not reach the alternative theory of subjective ill will relied upon by that court.

*Olech*, at 564–565 (citations omitted).

Thus, under *Olech*, a claim can be stated if the Plaintiffs demonstrate that they are "similarly situated" and that the Truro Defendants' action were "irrational and wholly arbitrary." The Truro Defendants first argue that the Allens cannot establish that they are similarly situated to others who have received permits. Rather, than request through interrogatory a full accounting of similarly situated properties with an explanation of the basis of the similarities written with the assistance of counsel and expert witnesses, the Truro Defendants use three examples given by one of the Plaintiffs in a deposition to assert that it is impossible to prove that similarly situated properties have been treated differently. Thus, the Truro Defendants have not met their burden of proof.

Notwithstanding, the Truro Defendants argument is devoid of any application of the facts to the applicable regulatory law. That is the Plaintiffs' position is that the Town of Truro has applied different standards to the Plaintiffs when applying the same law. For example, under the WPA, certain requirements known as performance standards apply to properties located in "coastal dunes."[4] Here, the Truro Defendants have argued that

---

[4]The Plaintiffs deny that their property is in a coastal dune.

the Plaintiffs property fails to meet applicable performance standards because it contains solid wall foundations and a retaining wall. *See* Revere Aff. at Ex. Twenty Three. However, the Sexton property is located within a "coastal dune" (Revere Aff. At Ex. Twenty Four, p. 5-6B, para. 3 (Order of Conditions under WPA stating: "The proposed work would be located entirely within the coastal dune portion of a barrier beach.")), and that project specifically allowed a "retaining wall." *Id.* at p. 8. Similarly, the Newman property is located within the same flood plain and, in area which Newman's own filings with the DEP conclude is a "coastal dune." Revere Aff. at Ex. 21. However, the Town Truro has permitted her to construct a solid foundation (Revere Aff. at Ex. 19) and a septic system.[5]

With respect to the septic system, the Truro Defendants' position is extraordinary. As explained in the facts section, the DEP expressly found that the septic system on the Plaintiffs' property could be constructed in complete compliance with state law without a variance (Revere Aff. at Ex. Eight) and that the variance was only necessitated to ensure that the septic system was more than 100 feet from Pamet Harbor. Furthermore, the Superior Court had already ruled that the Town of Truro could not object to the issuance of the variances. Revere Aff. at Ex. Seven.

---

[5] A review Exhibit 23 also shows testimony arguing that the building disturbs to much of the "coastal dune." Attached as Exhibit 25 to the Revere Affidavit are Truro Tax Assessor data sheets for four homes that have been permitted by the Conservation Commission for substantial additions within the past five years all of which are located within "coastal dunes" on lots of comparable size to the Plaintiffs.

With respect to the licensing of the pier and floats, the evidence in the record shows that the Allens proposed float system goes no further into the Pamet River than the adjacent Pamet Harbor Yacht Club (Revere Aff. at Ex. 5) and the adjacent state pier and that the yacht club has been allowed to maintain floats over town land whereas the Allens have been denied such permission.

With respect to zoning and the character of the harbor area, this matter simply asks that Ms. Newman be subject to the same zoning requirements which the Town of Truro's attorney states apply to the Plaintiffs' property. Furthermore, a review of Exhibit Five to the Revere Aff. (aerial photograph) shows that the three properties in the 1972 subdivision (Truro Defendants' Exhibit 2, at pp. 3-5) are located between a large asphalt parking lot, the yacht club with its parking lot, tennis courts, and waterfront clubhouse building, and a large house on a hill to the east (*i.e.*, left on Exhibit One). Thus, the area is highly developed already contrary to the assertions of the Truro Defendants.

On this basis, the Truro Defendants have failed to demonstrate that the Plaintiffs cannot show that similarly situated properties have not been treated differently. Further, Plaintiffs have provided sufficient evidence to demonstrate that the actions of the Town of Truro are wholly irrational and arbitrary.[6]

---

[6]In this regard, the Truro Defendants have emphasized the lack of proof of racial or national origin animus. Counsel for Plaintiffs is compelled to agree that Plaintiffs' belief that persons of the jewish religion are responsible for the actions of the Town of Truro certainly is unsupported by her deposition. Notwithstanding, Ms. Cordi-Allen's mid-eastern background may qualify her for heightened scrutiny of the Truro Defendants' actions.

22

## VI.    Town of Truro Is A Proper Defendant

Under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a government entity, such as a municipality, may be held liable for damages under section 1983 "when execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 98 S.Ct. at 2037-2038. Here and as set forth in the facts below, the Allens' damages result from a concerted effort by the Boards, Commissions, and agencies of Truro, a municipality of Massachusetts, to harass the Allens and to apply different substantive standards to them than they have not applied to like situated property owners. Furthermore, as shown by Exhibits 14 and Paragraphs 47 and the Complaint and Answer, the Town of Truro is the Plaintiff or appellant in two proceedings against the Allens and, therefore, it is the Town that is executing the policy which inflicts the injury.

## VII.    State Civil Rights Act - Truro Defendants

Plaintiffs agree that they state no claim against the Truro Defendants under the State Civil Rights Act pursuant to applicable precedent.

## VIII.    M.G.L. ch. 40A, Sec. 17 - Newman Defendant

Quite incredibly, Defendant Brooke Newman argues that the court ought to award her reasonable costs and attorneys fees for this matter. Like Ms. Newman before DEP (*see* Plaintiffs Ex. 21), the Plaintiffs simply desire to ensure that the law is enforced and

equally.  Ms. Newman truly is in no position to complain as she has appealed a superseding order of conditions and the Amended DEP Variance to similarly ensure compliance with applicable law.  This is especially true when in the DEP appeal she is attempting to have the Plaintiffs comply with requirements for "coastal dunes" which she has not herself done.

With respect to consideration of the Anti-SLAPP statute, it is simply inapplicable in federal court.

Respectfully Submitted,

Paul Revere, III
(BBO #636200)
Law Offices of Paul Revere, III
297 North Street, Suite 336
Hyannis, Massachusetts 02601
(508) 778-7126

Dated: June 16, 2006.

I certify that a copy of this brief was served on all counsel record on June 16, 2006.

Paul Revere, III

24