UNITED STATES DISTRICT JUDGE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA CORDI-ALLEN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 05-10370-PBS |
| | ) |
| JOSEPH CONLON, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

July 19, 2006

Saris, U.S.D.J.

**INTRODUCTION**

This case involves a heated zoning dispute in Truro,
Massachusetts over waterfront property on Cape Cod.  As a basis
for federal question jurisdiction, plaintiffs Barbara Cordi-Allen
and John Allen assert a claim pursuant to 42 U.S.C. § 1983 that
the Town of Truro discriminated against them in violation of the
Equal Protection Clause of the United States Constitution by
requiring them to get a special permit to build a home when it
treated a neighbor located nearby more favorably, and by
arbitrarily treating them in other ways as well.[1]   They allege

---

[1]  Plaintiffs have made other federal claims of unlawful
takings by eminent domain and substantive due process violations
in passing, but they have not pressed those claims either in the
briefing or at the hearing.  I do not address them and consider
them waived.

various state causes of action.[2]   Most significantly, pursuant
to Mass. Gen. Laws ch. 40A, § 17, they appeal a decision of the
Town of Truro Zoning Board of Appeals denying Ms. Cordi-Allen's
request for revocation of a building permit and enforcement of
the Town of Truro's Zoning Bylaws against defendant Brooke
Newman, the neighbor.

Defendants Town of Truro and the individual members of the
Truro Zoning Board of Appeals have moved for summary judgment on
all counts.  The neighbor Brooke Newman has moved for summary
judgment on Count 1, the only count in which she is a defendant.
After hearing, the Court dismisses the federal cause of action
and remands the state claims.

**UNDISPUTED FACTS**

The record, which involves multiple proceedings before the
Town of Truro, the Truro Conservation Commission, the Department
of Environmental Protection ("DEP"), and the state courts, is
often quite difficult to follow.  The following facts appear to
be undisputed except where otherwise stated.

1.   The Purchase of the Boathouse Cottage

In March 1996, the Allens purchased their waterfront
property on 5 Yacht Club Road, Truro, Massachusetts, from

---

[2] The complaint asserts: an appeal of the Zoning Board of
Appeals Decision, Mass. Gen. Laws ch. 40A, § 17 (count 1); a
Federal Civil Rights claim under of 28 U.S.C. § 1983 (count 2);
State Civil Rights claim under Mass. Gen. Laws ch. 12, §§ 11H and
111 (count 3); Reversal of Eminent Domain in violation of the
state and federal Constitution (count 4); and request for
declaratory judgment (count 5).

2

Financial Enterprises, Inc. ("FEC").  It is part of a three-lot
subdivision within the Pamet River/Mill Creek embayment approved
by the Truro Planning Board in 1972.  The property abuts property
owned by defendant Brooke Newman, Sara Landis, and The Pamet
Harbor Yacht Club.  The Allens' property currently contains a
small 400 square foot cottage on approximately .561 acres (24,437
square feet) of land directly on Pamet Harbor.

     The Allen property also has a fixed pier extending from the
cottage, which was once a boathouse, approximately 122 feet from
mean high water into the Pamet River.  The property has an
easement for the pier.  Currently, the property owned by the
Allens is not licensed for a float.

     2.  <u>Problems on the Land</u>

     Development of the property ran into problems early on.  In
1992, the prior owner had submitted a request for a variance
under Title V to construct a non-nitrogen removing septic system
for the property.  The requested variance was approved by the
Truro Board of Selectmen in a decision that stated, "Regardless
of the capabilities of the Title V system, the dwelling will be
restricted to a one (1) bedroom residence."  However, in the next
step, the request was denied on February 9, 1993 by the Truro
Conservation Commission, stating: "The Commission finds the site
of the proposed septic system to be in flood zone A4, and mainly
in the 100 foot buffer zone of the shore of Pamet Harbor, a tidal
salt water body.  <u>The site is an altered coastal dune</u>." (Revere
Aff., Ex. 3) (emphasis added).  In May 1993, the Southeast

3

Regional Office of the DEP approved the site plan, stating its determination that the "resource area in which the site is located is Land Subject to Coastal Storm Flowage." No appeal was taken. Whether or not plaintiffs' property is on a "coastal dune" or a "coastal bank" continues to be a dispute significant to this litigation and parallel adjudicatory hearings in state court and before the DEP.

Initially unaware of the one-bedroom limitation in the 1992 decision by the Truro Board of Selectmen, the Allens had plans for a larger home. After purchasing the property in April 1997, the Allens requested certain variances from the Truro Board of Health (which had taken over the task of evaluating septic systems from the Board of Selectmen) for a new three-bedroom septic system. The Allens took the position that the septic plan was consistent with the wetland resource areas – in their view, a coastal bank and land subject to coastal storm flowage. The leaching field met Truro's requirement to maintain 100 feet of separation between the leaching field and the shores of Pamet Harbor. Truro denied the variances in 1997, but the Allens appealed to the Superior Court, which ordered the variances granted on April 15, 1999 because Truro had acted belatedly in ruling on the variances in violation of the statutory time period.

Then, in June 1999, plaintiffs applied to the DEP for a variance. At this point, the record is muddy because the Allens were floating different plans for expansion. Although initially

4

denying the request for a variance, the DEP approved the variance on January 18, 2000, and on June 8, 2000 the DEP issued a superseding order setting conditions for a relocated dwelling, pool, and detached garage under the Wetlands Protection Act, and approving the proposal for septic variances within certain criteria.  Apparently the DEP was confused because the superseding order setting conditions and the variance referenced different plans, so the Allens requested that the DEP variance be modified to reflect the new plan.  (It is not clear from the record what the "new plan" is.)  The DEP approved the new plans on April 30, 2001 and issued an amended DEP variance.  In 2001, the Town of Truro and the abutting neighbor Brooke Newman requested an adjudicatory hearing before the DEP and filed actions in Superior Court challenging this amended DEP variance on the ground that DEP did not properly count the number of bedrooms.  The Town contended there were at least five bedrooms due to the fact that the plans show a total of ten rooms, and also challenged the variance as not in the public interest.  The Allens contend there are three bedrooms and that the Town was unfairly counting hall space.  These actions are pending.

The current plans for development of the cottage are grandiose.  The Allens propose to construct a _new_ 1512 square foot single family dwelling with a new attached garage of 1750 square feet; to renovate the cottage/boathouse into a second dwelling which is 640 square feet in area; and to install an inground pool of 410 square feet in area with surrounding decks.

5

All construction is proposed on solid foundations.  Construction
will take place within 20 feet of the mean high water mark and
within 3 feet of the top of the coastal bank/dune.  The leaching
component is proposed to be located about 115 feet from the high
water mark.  The flood elevation is 12 feet; the proposed
construction is between eight and ten feet in elevation.

In April 2002, Town Counsel wrote to the Allens that they
needed a variance from the zoning bylaw to expand their home, or
at a minimum obtain a special permit.  The Allens have never
submitted a request for a special permit or variance, and dispute
that they should be required to do so because of the timing of
their subdivision plan in 1972 which they claim grandfathered
their lot from the 33,750 square foot zoning requirements.  See
Bylaw Section 1X(A)(1) (stating that no building shall be
constructed on a lot with an area less than 33,750 square feet).
See Mass. Gen. Laws ch. 40A, § 96.  The Town disagrees,
contending that the subdivision plan went into effect after the
zoning change.  Regardless of the merits of this dispute, the
Allens complained bitterly to Town officials that Ms. Newman was
favored because she was only required to get a regular building
permit to expand her home.  The Truro Conservation Commission has
never reviewed the Allens' plan for building expansion because it
is presently pending review in an administrative proceeding
before the DEP.  The project construction has not yet begun.

3.   Problems on the Water

On July 24, 1998, the Army Corps of Engineers informed the

6

Allens it was unlikely to allow the then pending application to
extend the floats approximately 100 feet from the existing pier.
Among other things, the Army Corps believed it would restrict
navigation in the harbor at low tide.  It expressed a willingness
to issue a permit for a shorter pier and float consistent with
the adjacent Yacht Club pier.

    Prior to the Allens' purchase, the DEP had determined that
the license pursuant to Mass. Gen. Laws Chapter 91 was valid for
the fixed pier, but that any pile-held floats would require a
DEP-issued Chapter 91 license.  However, the DEP took the
position that bottom-anchored floats could be installed pursuant
to an annual Chapter 91, § 10A permit from the local
Harbormaster.  The Allens applied to the DEP for a Chapter 91
license to maintain and extend a pier and two floats.  The Town
administrator and Harbormaster sent letters opposing this request
on June 19, 2000.  In 2000, the DEP denied the Chapter 91
license, and that denial is now the subject of an adjudicatory
hearing.

    On February 15, 2002, the Town of Truro took the tidelands
in front of the plaintiffs' property by eminent domain and
offered the Allens $2,500 for the land, which was the lowest
offer to any property owners and approximately ten percent of the
amounts paid to their residential neighbors, including Ms.
Newman. The Town explained as a reason for the low offer that the
property had an easement for the pier, and therefore asserts
there was no significant diminution in property value.  An

7

eminent domain action is now pending in Superior Court.

In July 2004, the Allens again requested authority to install floats off of the "viewing platform" of the pier.  Town Counsel refused the licenses as the Town owned the tidelands in which they would be located.  However, the Town of Truro licensed for two years the pre-existing floats of the Pamet Harbor Yacht Club which, according to the Allens, extend beyond their easement.

4.    The Newman Property

The Newman house is set somewhat back behind the Allens' home, but has access to the waterfront via a pathway.  The property abuts the plaintiffs' property.  The renovated two-bedroom dwelling (the Allens claim it is really a three-bedroom dwelling) is approximately 183 feet from the mean high water mark and 162 feet from the top of the coastal bank.  The leaching component of the septic system is located over 225 feet from the mean high water mark.  The flood zone for the property is at elevation 12 feet and the house is constructed between 10 and 12 feet.  The structure, as it was proposed to the Commission, is on a crawl space foundation with break-away panels as required by the building code because the dwelling is in a flood zone.

On October 28, 1998, the Building Department of the Town of Truro issued a building permit for construction on the Newman property at 3 Yacht Club Road without requiring Ms. Newman to obtain a special permit or a variance.  The Newman proposal involved the relocation of a pre-existing dwelling, the addition

8

of a second floor, a new foundation, a proposed 90 square foot
addition, and an upgraded Title V septic system.

During May 1998 through February 1999, the Truro
Conservation Commission issued an order of conditions and
modifications allowing Ms. Newman to relocate and expand her home
at 3 Yacht Club Road.  The Allens' property is between the Newman
property and Pamet Harbor.  The Allens contend that the
conditions placed on this property were different from the
treatment they received when they filed their notice of intent
with the Truro Conservation Commission in 1996 because the plans
contained the same wetland resource areas (coastal bank and land
subject to coastal storm flowage).

In May 2004, five years after the completion of the two-
story renovated Newman dwelling, the Allens requested that the
Truro Conservation Commission initiate enforcement against Newman
for failure to comply with the terms of her order of conditions
and  with the "coastal dune" performance standards which the
Commission and Ms. Newman had argued before the DEP should have
applied to the Allen property.  On November 4, 2004, the
Commission voted to issue a certificate of compliance that the
work performed by Ms. Newman was "in substantial compliance with
her approved plans."

On July 26, 2004, Cordi-Allen requested that the Building
Commissioner enforce the Truro zoning bylaw by revoking the
building permit issued to Brooke Newman and requiring her to
obtain a special permit or variance for her addition.  Plaintiffs

9

took the position that a special permit or variance was required to move the Newman dwelling and construct the 90 square foot addition as the lot on which the property was located was less than 33,750 square feet.

In contrast, the Allens point out they were required to apply for a special permit because they had an undersized lot. On October 19, 2004, the Truro Building Commissioner tersely denied the Allens' request for action on the ground that it was authorized to do so by Bylaw Section VIII-B.2,[3] stating that the former commissioner had determined that Newman's proposal was not "substantially more detrimental to the neighborhood" and "will not increase the nature or extent of the nonconformity."  On October 26, 2004, Cordi-Allen appealed to the Truro Board of Appeals and filed notice with the Barnstable Country Registry of Deeds on the following day.  The Truro Zoning Board of Appeals held a public hearing in December 2004 and again on January 10, 2005.  On January 19, 2005, the appeal was denied on the merits

---

[3] Section VII.B.1 of the Truro Zoning Bylaw provides:

Lawful preexisting, non-conforming structures and uses may, when a variance would otherwise be required, be altered, or extended with a special permit if the Board of Appeals finds that the alteration or extension will not be substantially more detrimental to the neighborhood than the existing nonconforming structure or use and the alteration or extension will exist in harmony with the general purpose and intent of the bylaw.

Section VII-B.2 allows the Building Commissioner to issue a simple building permit if Section VII.B.1 does not apply when the applicant proposes "repair, reconstruction, alteration, or structural changes."

and as time-barred.  This action was filed on February 8, 2005 in
the Superior Court and was timely removed here.

     5.   <u>The Sara Landis Property</u>

    The Landis waterfront property abuts the Newman property.
The Landis site plan, which was approved by the Truro
Conservation Commission at its meeting on April 12, 2004,
proposed an addition to an existing dwelling which was
approximately 800 square feet in area located approximately 190
feet from mean high water mark.  The foundation for the addition,
which is now completed, was constructed on pilings, which the
Conservation Commission claims is "in compliance with building
code requirements for construction in a flood plain."  The
Commission did not take the position it was located on a sand
dune.  The flood zone elevation was at 12 feet, and the house was
to be constructed at a ground elevation level of 12 feet.  Landis
requested the grant of a special permit for the addition and
renovation of an existing dwelling on a pre-existing non-
conforming lot.  The Truro Board of Appeals granted the special
permit on December 16, 2003 pursuant to Bylaw Section VII.B.1.

<b><u>DISCUSSION</u></b>

     1.   <u>Summary Judgment Standard</u>

    "Summary judgment is appropriate when 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law.'"  <u>Barbour v.</u>

11

Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995) (quoting
Fed. R. Civ. P. 56(c)), cert. denied, 116 S. Ct. 914 (1996).
"To succeed [in a motion for summary judgment], the moving party
must show that there is an absence of evidence to support the
nonmoving party's position." Rogers v. Fair, 902 F.2d 140, 143
(1st Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317,
325 (1986).

      "Once the moving party has properly supported its motion for
summary judgment, the burden shifts to the non-moving party, who
'may not rest on mere allegations or denials of his pleading, but
must set forth specific facts showing there is a genuine issue
for trial.'" Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 256 (1986)). "There must be
'sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party. If the evidence is merely
colorable or is not significantly probative, summary judgment may
be granted.'" Rogers, 902 F.2d at 143 (quoting Anderson, 477
U.S. at 249-50) (citations and footnote in Anderson omitted).
The Court must "view the facts in the light most favorable to the
non-moving party, drawing all reasonable inferences in that
party's favor." Barbour, 63 F.3d at 36.

      2.    Statute of Limitations

      Defendants contend that the § 1983 claim is barred by the
three-year statute of limitations and is not supported by the
record. The parties agree that the statute of limitations that
applies to the civil rights claim under 42 U.S.C. § 1983 is three

years.  See Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991).  It
accrues when the plaintiff knows or has reason to know of the
injury that is the basis of the action.  Id. at 40.  This lawsuit
was filed in February 2005.

Plaintiffs claim that the Town of Truro discriminated
against them in three ways.  First, they claim that Town Counsel
told them on April 5, 2002 they were required to get a special
permit or a variance for their new dwelling while Newman next
door was not required to get a special permit in 1998.  That
claim is not time-barred.

Next, plaintiffs claim that the Truro Conservation
Commission was making an argument that the Allens were proposing
to build a new structure on a "coastal dune" which carries more
stringent septic and WPA requirements, although it classified
Newman's new dwelling as located on a "coastal bank."  That claim
is time-barred because the Town of Truro took that position in
2001 when it appealed the DEP determination to grant the septic
variance, whereas in 1999 it took the position that the Newman
property did not contain a coastal dune.

Finally, the Allens complain that the Town refused to
license their request for a float on the tidal flats of Pamet
River but allowed the nearby Yacht Club to have the floats.  That
claim is not time-barred because Town Counsel denied the permit
in July 2004.  Therefore, the claim must be addressed on the
merits.

3.  <u>The Merits</u>

Plaintiffs argue that the defendants' alleged different treatment with respect to their applications and requests, when compared with these other properties, had no "rational basis." <u>See generally</u> <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (per curiam).  To prevail on a "class of one" allegation, plaintiffs must prove that the Town (1) intentionally treated them differently; (2) from others similarly situated; and (3) without a rational basis for the difference in treatment.  <u>See</u> <u>Pariseau v. City of Brockton</u>, 135 F. Supp. 2d 257, 263 (D. Mass. 2001).  The Supreme Court did not require a showing of subjective ill will or illegitimate animus.  <u>See</u> <u>Burns v. State Police Ass'n of Mass.</u>, 230 F.3d 8, 12 n.4 (1st Cir. 2000).  In <u>Tapalian v. Tusino</u>, 377 F.3d 1, 6 (1st Cir. 2004), however, the First Circuit held that normally a plaintiff must establish "more than that the government official's actions were simply arbitrary or erroneous; instead, the plaintiff must establish that the defendant's actions constituted a 'gross abuse of power.'"  The Seventh Circuit has similarly held that the "no rational basis" standard requires that the plaintiffs "present evidence that the defendant deliberately sought to deprive [them] of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." <u>Hilton v. City of Wheeling</u>, 209 F.3d 1005, 1008 (7th Cir. 2000).  This showing requires "more than just a perceived difference in treatment for which the

14

plaintiff has received an unsatisfactory explanation." Lakeside
Builders, Inc. v. Planning Bd., 2002 U.S. Dist. LEXIS 4725, at
*10 (D. Mass. March 21, 2002) (citing Hilton, 209 F.3d at 1008);
See also Vill. of Willowbrook v. Olech, 528 U.S. at 565 (Breyer,
J., concurring).

     Here, the primary focus of plaintiffs' ire is their
perception that they were treated differently from Ms. Newman.
However, the undisputed facts demonstrate they were not similarly
situated, as the picture of the two properties in the record
amply illustrates.  With respect to the Town's requirement that
the Allens seek a special permit or variance, Newman sought to
expand a pre-existing structure by 900 square feet; the Allens
sought to build a brand new compound with two buildings, and a
deck and pool complex of over 4,000 square feet.  It was not
irrational for Town Counsel to opine that under Truro Bylaw
Section VII.B.1 the new home was a non-conforming structure that
required at least a special permit.  The proposed new Allen home
did not simply involve "repair, construction, alteration or
structural changes" which gave the Building Commission the
discretion to act without a special permit.  Significantly, the
other next door neighbor, Sara Landis, was also required to seek
a special permit.  Thus, the Allens are not a class of one, but
at least a class of two.  It may well be that Newman should have
been required to get a special permit for the relocation of her
home and the addition.  However, the controversy involves a good
faith dispute over the application of the zoning bylaw (about

                              15

which I do not rule), not irrational or malicious disparate
treatment.

The next issue[4] is whether the Truro Conservation Commission
unfairly sought to characterize the location of the Allens' new
proposed dwelling as a "sand dune" or a "coastal bank."  Here,
while the record is not clear on this point, the Town allegedly
took an inconsistent position with respect to Newman's property
(located 183 feet from the mean high water mark and 162 feet from
the coastal bank) by permitting her to build a foundation
consistent with a flood zone (i.e. a foundation that could drain
by having a crawl space).  By seeking to designate the Allens'
house as located on a dune, the Town Conservation Commission
apparently seeks to require the new home (about 20 feet from the
high water mark) to be placed on pillars.  There is a disputed
fact issue as to whether the area is an altered coastal dune or a
coastal bank.  However, the dispute is not material because
another similarly situated home is the Landis home, 190 feet from
the mean high water mark, not the Newman home; the Landis
addition was placed on pillars.  Moreover, the Allens want to
build on a solid foundation without even the crawl space that
Newman has for drainage.  Other nearby waterfront properties
owned by the Perrys and the Sextons also have pilings.  Thus,
regardless of the dune/coastal bank dispute, there is no evidence

---

[4] This claim is time-barred but plaintiffs use evidence of
the disparate impact to moor their claim that the Town is
discriminating against them.

that the Allens' property was treated differently from Landis's property or other waterfront properties farther from the high water mark.  The difference between the locations of the Newman and Allen properties demonstrates a lack of similarity. Certainly there is no evidence of such an arbitrariness or gross abuse of power to trigger concerns of a constitutional magnitude.

Finally, the record is antiseptic on the Town's recent 2004 decision to deny a license for the float on the tidal flat which plaintiffs allege goes no further into the Pamet River than the Yacht Club.  On the float issue, plaintiffs have not adequately explained the basis for the disparate impact claim and the record is extremely confusing as to the sequence of events and the regulatory scheme for the various requirements for piers and floats.  For example, it is not clear whether the Yacht Club has anchored floats or floats on piles or what kind of float plaintiffs were seeking.  In any event, the Yacht Club pier and float are not similarly situated to the Allens' pier and float because the floats for the Yacht Club were apparently licensed before the eminent domain taking whereas the DEP and the Army Corps of Engineers had denied the Allens' request for a license and permit for the floats.  This claim does not have support in the record to demonstrate either that the floats were similarly situated or that the Town was acting irrationally in light of previous decisions by the DEP and Army Corps of Engineers.

### ORDER

The motion to dismiss the federal claims is **ALLOWED**.  The

17

State claims are **REMANDED** to state court.

                                        S/PATTI B. SARIS
                                   UNITED STATES DISTRICT JUDGE